### EZRA BIRCHARD *vs.* HEZEKIAH SCOTT AND OTHERS.

A testator bequeathed certain estate in trust, the income to be paid to "the first committee of the school society in the town of Ridgebury, for the use and benefit of such families in said society in their schooling as shall not exceed in the list of the town for the year the sum of fifty dollars." After the death of the testator and the probate of the will, school societies were abolished and schools made free by act of the General Assembly, and thereafter the trust fund was appropriated by those having it in charge to the purchase of school books, and to other expenses of schooling, of such poor scholars within the limits of the former society as were within the description of beneficiaries in the will.

Held, that the trust had not terminated, and that in the appropriation of the fund the intention of the testator was fairly and literally carried into effect.

BILL IN EQUITY by the petitioner as heir at law of Jeremiah Smith, deceased, alleging that a certain trust created by the will of the deceased had terminated, and praying that the

avails of the trust estate might be decreed to belong to the petitioner; brought to the Superior Court, and reserved for advice on the following facts found by the court:

Jeremiah Smith, the testator, resided in that part of Ridgefield known as the parish of Ridgebury, or school society of Ridgebury, and continued so to reside until the time of his death, which occurred in the latter part of December, 1839, or early part of January, 1840. On the 30th of August, 1837, Smith made his last will and testament, of which the material parts are as follows:

Second. I give and bequeath the use of my estate to my wife Sarah, and to Arza Smith, for and during the lifetime of my said wife, and if the use should not be sufficient for their support, that such part of my said estate as is necessary be taken therefor.

Third. And after the decease of my said wife, I give and bequeath equally to the brothers and sisters of my said wife, or in case of the death of either of them, to their heirs, the sum of three hundred dollars, to be paid out of my personal estate, so far as it will go.

Fourth. I give and bequeath the sum of five hundred dollars equally to the heirs of Jeremiah Birchard, deceased, also to be paid after the decease of my wife Sarah.

Fifth. If the said Arza Smith shall survive the death of my said wife, I give and bequeath the use of the remainder of my estate to him for and during his natural life.

Sixth. After the decease of my wife and of said Arza Smith, and after the payment of the said legacies, I bequeath and direct that the remainder of my estate be rented out yearly, and that the clear avails thereof, after keeping the said estate in reasonable good repair, be forever paid, the one-half thereof to the first trustee of the Universalist society in the town of North Salem, in the county of Westchester, and state of New York, for the use and benefit of said society, and that the other half of said income be paid to the first committee of the school society in said Ridgebury, for the use and benefit of such families in said society in their schooling as shall not exceed in the list of the town for the year the sum of fifty dollars.

Lastly, I hereby constitute and appoint Major Bouton, of said Ridgebury, and Hezekiah Scott, of Ridgefield, executors of this my last will, fully authorizing and empowering them fully to execute this trust, and I hereby revoke any will that I have heretofore made ; and it is my will and direction that, on the decease of my said wife, the said first trustee of said Universalist society, together with the said first committee of said school society, jointly oversee and assist in the management of said estate, for the good of all interested.

On the 20th of January, 1840, the will was duly proved and approved by the court of probate for the district of Danbury, within which district the town of Ridgefield was then situated.

The persons named in the will as executors accepted the trust, and proceeded with the settlement of the estate. They rendered their account as executors on the 13th of June, 1842, showing a balance in their hands at that time of $4,500 in real estate, and $2,400 in personal estate. On the 25th of April, 1849, and after the death of Azra Smith, who survived the widow of Jeremiah Smith, the executors rendered a further account, and there then remained, besides the real estate, the sum of $2,608.94 in personal estate. A further settlement was made by the surviving executor on the 20th of November, 1869, and there then remained said real estate, and the sum of $3,397.14 in personal estate. The increase in the value of the estate arose from the sale and conversion of certain timber on the real estate into money, which was added to the personal estate, and not because the annual income was not applied in accordance with the provisions of the will of the deceased.

The several parties mentioned in the second, third and fourth clauses of the will, except Marilda Taylor, who was one of the heirs of Jeremiah Smith, died before 1856, and the legacies mentioned in the third and fourth clauses were paid in full before the first settlement above mentioned. The executors placed the management of the estate, after the first settlement, in the hands of the first trustee of said Universalist society, and of the first committee of said school

society, until the year 1856, when school societies were abolished by the General Assembly. The several towns have been required, since said societies were abolished, to provide for schools within their respective limits, and all pecuniary trusts of school societies theretofore existing, pertaining to schools, remained by law in full force, and all funds and school property of every kind for school purposes vested in the towns within which such school societies were situated. At that time the selectmen of the town of Ridgefield requested James E. Hayt, a resident of Ridgebury, and who was then a school visitor of the town of Ridgefield, to assist in the management of the estate in the place of the school society's committee, and since that time Hayt and the first trustee for the time being of said Universalist society have jointly taken charge of the estate. The real estate of the deceased has all been sold at various times by authority of the General Assembly, and the avails placed at interest; and the whole of the estate is in the hands and under the control of Hayt and of Daniel Hunt, who was at the time of bringing the petition, and now is, the first trustee of said Universalist society, but they have retained and exercised such control and management with the assent of the executors, and always advised with them, and acted under their supervision and by their advice, in the management of the estate and in the disposition of the income.

The last sale of said real estate was authorized by a resolution of the General Assembly at its May session, 1869, and Hayt and Hunt complied with the provisions of that resolution. Under that authority all the remaining real estate of the estate was sold. No trustee of the estate has ever been appointed by any court, nor by any written authority of the deceased, nor in any other manner than appears by the will. One-half of the net income of the estate has been annually paid over to the first trustee of said Universalist society, which is still in existence, and the remaining half thereof, until the 73d chapter of the public acts of the General Assembly of 1868 went into operation, was paid out and applied by those having the estate in charge towards the abatement of

the rate bills, and other expenses of schooling of families within the former limits of said society, whose property, as set in the list of said town up to 1860, did not exceed the sum of $50. At and after 1860, one-half of said income was applied as aforesaid for those families whose property as set in the list of said town did not exceed $1,667. Since the death of the testator, there always have been and are persons residing within the former limits of said society, having children, and whose property has been and is assessed in the list of the town of Ridgefield at less than $50; and in January, 1871, there was a large number of such families having children who attend the common schools, who have heretofore received, and, if said trust has not terminated, would now be entitled to receive, the benefit of one-half of said income, which those having the estate in charge have appropriated to the purchase of school books for poor scholars, and in other expenses of schooling, and which they might appropriate, if authorized by the terms of the trust, to the payment of school district taxes, and in extending the terms of schooling in the several school districts beyond the term provided by the town.

*Sanford*, for the petitioner, cited *Parker* v. *Converse*, 5 Gray, 336; *Liptrot* v. *Holmes*, 1 Kelly (Geo.), 381; *Bowditch* v. *Andrew*, 8 Allen, 339; *Smith* v. *Armington*, 4 id., 566; *Attorney General* v. *Whiteley*, 11 Ves. Jr., 241–247; Lewin on Trusts, 105; Perry on Trusts, secs. 718, 724, 725, 726, 729, 733; *Corbyn* v. *French*, 4 Ves., 419; *Attorney General* v. *Andrew*, 3 id., note (*a*); Tiffany & Bullard on Trusts, 244; Sugden on Powers, 121; *White* v. *Fisk*, 22 Conn., 31; Gen. Stat., 333, secs. 34–37; 334, sec. 40; 336, sec. 57; Acts of 1868, 188, ch. 73; Acts of 1869, 294, ch. 71; Rev. Stat. of 1835, 467.

*Averill* and *Brewster*, for the respondents.

FOSTER, J. By the will before us the testator gave the use of his estate to his wife and Arza Smith, during the life of

his wife. After the death of his wife certain pecuniary lega-
cies were to be paid, and if Arza Smith survived her, the use
of the remainder of the estate was then given to him for life.
After the decease of his wife and Arza Smith, and after the
payment of the money legacies, the testator directs that the
remainder of his estate " be rented out yearly, and the clear
avails thereof be forever paid, the one-half to the first trustee
of the Universalist society in the town of North Salem,
county of Westchester, and state of New York, for the use
and benefit of said society," and that " the other half of said
income be paid to the first committee of the school society in
said Ridgebury, for the use and benefit of such families in said
society, in their schooling, as shall not exceed in the list of the
town for the year the sum of fifty dollars." The executors
named in the will are fully authorized and empowered to execute
this trust. The widow of the testator and Arza Smith are now
both dead; the legacies have all been paid; no question is made
as to the validity of the bequest to the Universalist society, but
it is alleged in the bill that the school society in Ridgebury
has ceased to exist, and that whatever trust was created for
the benefit of said society and of said families has become
inoperative, has lapsed and terminated, and that the heirs at
law of the testator are entitled to one-half of said estate, and
to one-half the income which has accrued thereon since the
time when they so became entitled thereto.

Has this trust become inoperative ; has this bequest for the
benefit of certain families in the school society in Ridgebury
lapsed and terminated ?

The object of this testator—the promotion of education, the
diffusion of its blessings among the children of want and pov-
erty—was certainly most laudable, most desirable. A design
so noble should not be frustrated, unless there are insuperable
obstacles to its accomplishment.

We do not think the changes in our law respecting school
societies, made since the probate of this will, materially affect
this question. This gift is not to the school society, but to
certain families within the limits of the society. Though the
society be abolished, the territory remains, and the families
remain. The mode of taxation also is changed. When this

will took effect, land went into the assessment list at three per cent. of its value ; now, at its value. Families whose lists did not exceed fifty dollars a year might be beneficiaries under this will. Applying the same rule under the existing law, families whose amount in the list of the town does not exceed $1,665 may be beneficiaries. Schools, it is said, are now free, and the object of the testator therefore being accomplished, the trust should cease. Happily our schools now are substantially free ; but we can have no assurance that they will continue so. Even if they should, there is still room for this gift to work out most beneficent results, without perverting the benevolent intent of the donor. Children of parents without means, or with very limited means, cannot avail themselves of the benefits of a free school without further help and additional facilities. Books and other things must be procured. We do not propose to give a definition of the term "schooling" as used in this will, or to decide whether it is confined to common schools or not, deeming it unnecessary to do so. We think however that it has a broader and more comprehensive meaning than the mere payment of school bills, as contended for by the petitioner.

We see no grounds for believing that the moiety of the income of this estate has been, or now is, perverted from the original purpose had in view by this testator. On the contrary, it seems to us that his intention is being fairly and literally carried into effect, and, for aught that we can discern, this may be continued for an indefinite period of time. It would be unjust alike to the living, and to the memory of the dead, were we to take this estate out of the hands in which this testator placed it to effect a most desirable object, which object it is now effecting, and divert it into other channels. It would seem to contradict the remark of Sir Edward Coke in *Porter's Case*, 1 Rep., 24 ; "No time was so barbarous as to abolish learning and knowledge, nor so uncharitable as to prohibit relieving the poor."

The Superior Court is advised to dismiss the bill.

In this opinion the other judges concurred ; except CARPENTER, J., who was absent.