THE NEW HAVEN YOUNG MEN'S INSTITUTE *vs.* THE CITY OF NEW HAVEN.

New Haven & Fairfield Cos., June T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

A testator gave a portion of his estate "to the city of New Haven in trust, the income to be applied by the proper authorities for the purchase of books for the Young Men's Institute, or any public library which may, from time to time, exist in said city." When the will was made the Institute had the only library in the city that was in any sense public, though it was so only in a somewhat limited sense. Since his death a free public library had been established by the city under legislative authority, supported by annual appropriations from the city funds. Held not to be the intention of the testator to make the Institute the primary object of his bounty, but to vest in the city a discretion in the matter, and that in the exercise of this discretion the city could exclude it altogether and expend the money in the purchase of books for the free public library.

And held to be no objection to the selection of the free public library that the city taxes would be diminished by such a use of the bequest, since there was no obligation on the city to support the library by taxes.

And held that the bequest was not void as conflicting with the statute against perpetuities, on the ground that the selection might not be made in season to vest the equitable estate before that statute would apply.

A discretionary power in the execution of a trust may be implied.

[Argued June 3d, 1890—decided January 5th, 1891.]

SUIT to determine the rights of the plaintiff under a testamentary trust and to compel the execution of the trust; brought to the Superior Court in New Haven County. Facts found and case reserved for the advice of this court. The case is fully stated in the opinion.

*C. R. Ingersoll* and *E. P. Arvine,* for the plaintiff.

1. The testator's intention, as disclosed by the words of the bequest in question, was to make the then existing New Haven Young Men's Institute the primary object of his bounty. The provision for any public library that might from time to time in the indefinite future exist in New Haven, was secondary, alternative and substitutional. *Willard* v. *Pike,* 59 Verm., 202; *McDonald* v. *Massachusetts Gen. Hospital,* 120 Mass., 432; *Good* v. *Association &c. for Indigent Females,* 109 Mass., 558; *Am. Asylum* v. *Phœnix Bank,* 4 Conn., 172; *White* v. *Fish,* 22 Conn., 31; *Carey* v. *Carey,* 6 Irish Ch., 255; Theobald on Wills, 457; 1 Redf. on Wills, 487; 2 id., 400; 1 Jarman on Wills, 515; *O'Brien* v. *Heeney,* 2 Edw. Ch., 242.

2. No other construction can give force to all the words of the testator. And any other construction requires the mutilation of the will. 1 Redf. on Wills, 435; 1 Ram on Wills, 98.

3. Nor does the will justify any discretionary power in the trustee to exclude the Young Men's Institute from a participation in the bequest. 1 Perry on Trusts, § 248; 2 id., § 507; *White* v. *Fisk,* 22 Conn., 31; *Treat's Appeal from Probate,* 30 id., 113; *Coit* v. *Comstock,* 51 id., 352, 381; *Bristol* v. *Bristol,* 53 id., 242, 257.

4. The construction contended for by the city would invalidate the bequest for uncertainty, and therefore cannot be accepted if any other permissible construction is reasonable. Schouler on Wills, § 489; *Jocelyn v. Nott,* 44 Conn., 55; *Bristol* v. *Bristol,* 53 id., 242; *Riker* v. *Leo,* 115 N. York, 93.

5. But upon any construction of the will, as between the Institute and the city, the intention of the testator requires

the trust to be enforced in favor of the former. There is no reason why he should have specified the Young Men's Institute except that it was a well-established institution of the city adapted to the purpose of his will. But whether this be so or not, there is not in the provision in question a word or idea suggestive of an intention of the testator to aid the city of New Haven in the discharge of its public duty to maintain a free public library for its citizens. Such an intention is foreign to the whole scheme of the will. Nor can it be presumed of the testator, for the city had not then, nor for many years after, any such municipal power. Therefore, even if the will could be so construed as to let in for its benefit any public library that might exist, to the exclusion of the Institute that did exist, the public library of the city cannot be regarded as within such contemplation of the testator. And the act of the city as trustee in diverting the income of the fund from such a library as that of the Young Men's Institute to such a library as that established by the trustee itself, is a perversion of the trust of the will. The free public library of the city is a department of the city government, as much as its road department or fire department or police department. The amendment to the city charter requires the city to maintain it out of the city treasury. If the design of Mr. Marett was to relieve the taxpayers of the city of this responsibility, or any part of it, he most assuredly would have in some way expressed it. Certainly such an intention, so inconsistent with the charitable plan of Mr. Marett, ought not to be presumed. Nor can it be presumed against that strict rule of equity, which is also a rule of public policy, which forbids a trustee, under any circumstances, to profit or take any advantage by his trust. And that is, practically, what the construction of this will contended for by the city has led to. It has simply enabled the trustee to save for its treasury what the law would otherwise require it to appropriate for the maintenance of its library. At the very least, and beyond any question, it is using the trust income for its own purposes. And this can never be done by a trustee without

express warrant from the powers of the trust. 1 Perry on Trusts, § 129; 2 id., § 511*a*.

*W. K. Townsend* and *B. Mansfield*, for the defendant.

LOOMIS, J.   The complainant seeks to ascertain its rights in a trust fund created by the will of Philip Marett, dated August 30th, 1867. Marett died in New Haven March 20th, 1869. By his will the bulk of his estate was given to trustees of his appointment, to hold for the benefit of his wife and daughter during their lives, and upon the survivor's death, (in the words of the will,) " to be appropriated, distributed and disposed of as follows, namely :

" One fifth part to the Connecticut Hospital Society, in trust, the income to be applied to the support of free beds for the benefit of poor patients in said institution, giving preference to those incurably afflicted, if such are admissible.

" One fifth part to the city of New Haven, to be held in trust by the proper authorities, and the income to be applied through such agencies as they see fit, for the supply of fuel and other necessaries to deserving indigent persons not paupers, preferring such as are aged or infirm.

" One fifth to the President and Fellows of Yale College in trust, the income to be applied to the support of scholarships, or such other purposes in the academical department as they may judge expedient.

" One tenth part to the New Haven Orphan Asylum, to be held in trust, and the income applied to the support of poor inmates therein.

" One tenth part to the St. Francis (Catholic) Orphan Asylum in New Haven, to be held in trust, and the income to be applied to the support of poor inmates therein.

" One tenth part to the city of New Haven, in trust, the income to be applied by the proper authorities for the purchase of books for the Young Men's Institute, or any public library which may from time to time exist in said city.

" One tenth part to the state of Connecticut, in trust, the income to be applied towards the maintenance of any insti-

tution for the cure or relief of idiots, imbeciles and feeble-minded persons."

The contention of the parties relates to the question whether the intention of the testator was to make the New Haven Young Men's Institute the primary object of his bounty or to vest in the city of New Haven a discretion to exclude the plaintiff altogether and to bestow the legacy upon another public library in the same city.

In arriving at a just conclusion upon this subject both parties concede that force and effect must be given to all the language employed by the testator to express his intention in the premises. But in applying the principle the parties reach very different results. The language to be construed is—"One tenth part to the city of New Haven, in trust, the income to be applied by the proper authorities for the purchase of books for the Young Men's Institute, or any public library which may from time to time exist in said city."

The plaintiff contends that the defendant's construction would erase the Young Men's Institute as a beneficiary, while the defendant contends, on the other hand, that the plaintiff's construction practically erases the alternative provision for the benefit of any public library which may from time to time exist. There is some color of truth in both these claims, and yet both cannot be equally correct. Such different conclusions can only be reached by attaching a different meaning to the same words, or by reading something between the lines that the testator did not express.

The plaintiff has the advantage of being a named beneficiary, but to dispose of the alternative clause requires, not only that the fact just named should be specially emphasized, but that there should be also inserted a contingency upon which alone the alternative beneficiary may take, namely, that the Institute shall have ceased to exist prior to the testator's death. The defendant says :—"The words ' The Young Men's Institute ' were placed in the will for a purpose. It was not then a public library. It could not therefore be a beneficiary under the clause 'any public

library.' But it might agree to throw open its doors to the public, provided the trustees saw fit in their discretion to purchase books for it. Or the public library might not accommodate the public to the satisfaction of the trustees. In these events the testator was willing that, although the Institute was a private library, the trustees should purchase books for it." We will not stop to discuss whether or not there is adequate foundation for this statement. We prefer to adhere very closely to the language and provisions actually contained in the will, and to such natural and necessary inferences as may fairly be deduced therefrom, when considered in connection with all the surrounding circumstances.

Does the provision then, that requires the city to purchase books for the Institute, or any public library that may from time to time exist, mean that it shall purchase the books exclusively for the Institute provided it continues in existence?

The question cannot even be stated without implying a negative answer, for it requires the use of important additional words and provisions of which no hint is given in the will. Had it been in the mind of the testator to make the Institute the sole beneficiary, except upon the remote and and improbable contingency of its non-existence, it would have been most natural to have made a direct and absolute gift to it, with at most a proviso for some other ulterior disposition of it founded upon such contingency. It seems unnatural that the testator should have anticipated the non-existence of a corporation which in law never dies, and which the testator personally had known for twenty years as existing in New Haven; and had this been a controlling consideration, as the plaintiff assumes, it would most naturally have found expression in the will as we have before suggested. But we have been referred to decided cases where an alternative provision following the word " or," has been given a secondary and substitutional meaning. We think the cases are distinguishable from this.

In 1 Redfield on Wills, 487, it is said that the question has arisen most commonly in cases of devises to $A$ " or his heirs,"

where it has been held that the word " or," being inter-
posed between the name of the first devisee or legatee and
his heirs, indicated the intention of substituting the latter
in place of the ancestor.

It seems to us that all these cases may well rest upon the
implication derived from the phrase " or heirs," that the
first named donee is dead, otherwise in contemplation of the
law he could have no heirs.

Since the argument of this case our attention has been
called to the case of *O'Rourke* v. *Beard*, 151 Mass., 9, de-
cided in January, 1890. We find this case to be of the class
above referred to. An estate was given to trustees for the
benefit of the testator's three children, who were named,
adding the words " or their heirs." The court holds that
in such case "*or* makes a substituted gift, as is provided by
public statute chap. 127, sec. 23, in case either of the testa-
tor's children should die before him." It ought to be added
that the court did not rest the case wholly upon the statute
referred to, as they might, but also referred to several English
cases giving a similar construction. We have no occasion
or inclination to impair the force of these decisions, if we
had the power, by any adverse comment.

In the other cases to which our attention has been called,
the gift was direct and absolute in form to one person *or*
another, where, if the gift had not been held to be substitu-
tional, the whole would have been void for uncertainty, and
in none of those cases was there a discretionary power in a
trustee to select the beneficiaries from those named, as we
think there is in the case at bar.

In this case the entire language of the alternative bequest
points to a discretion in the trustee. Although the word
" or " may mean " and," or may have the meaning attrib-
uted to it in the cases referred to, yet its more natural mean-
ing when used as a connective is to mark an alternative,
and present a choice, implying an election to do one of two
things. But here, in addition to the force of the word " or,"
the words which immediately follow are peculiarly signifi-
cant and make our construction much more reasonable than

the opposing one. The word "any," used as an adjective, means "one out of several or many." When the city as trustee is directed to buy books for the Institute or for any public library, a selection is necessarily implied, and it is the city that is to determine and select the one among the others. The same idea is strongly reinforced and supported by the phrase " from time to time." This greatly enlarges the field for discretion and at the same time implies its existence. If then there is clearly a discretion to select one public library from those that may from time to time exist, it would seem unreasonable to confine it to one side only of the alternative presented by the word " or." We think the testator intended his trustee to exercise a discretion and make a choice as between the Institute and some public library that might after the making of the will come into existence. The fact that the Institute was specially mentioned does not necessarily indicate a preference, although the suggestion has considerable force. The mention of it with an " or " attached, presenting a choice, is very different from an exclusive mention. The Institute had the only library existing in New Haven, when the will was executed, in any sense public, and although it had doubtless been of great benefit to its patrons, yet it was a public library only in a somewhat limited sense. We will not stop to discuss the question whether the restrictions were too great to prevent its being a public library or not. It does not seem to us of great importance. The testator was willing and desired it to be the recipient of his bounty in case no better one should come into existence, but the alternative clause which he inserted justifies the inference that, with the future growth of the city, he anticipated that other libraries might be established which might prove more widely beneficial to the people of the city. Instead therefore of restricting his bounty to the Institute alone, he preferred to leave it open to the city to make the best possible selection. It is doubtless true that the same result might have been reached without special mention of the Institute. It was however not unnatural for him to mention the only existing institution

which could in any manner accomplish his beneficent purpose, and he may have thought that the omission of the name would involve an implication against the Institute which would prevent the trustees from duly considering its claim.

But we are confronted with an objection that lies back of all our reasoning, and will render it futile if it is to prevail, namely, that a discretionary power in the trustee to exclude the Institute from participating in the bequest cannot be implied. We do not think this position is correct. The contrary doctrine seems well established by repeated decisions of this court, and of the courts in other jurisdictions also. In *Storrs Agricultural School* v. *Whitney*, 54 Conn., 342, the gift was of a fund, the interest of which should be held by the selectmen as trustees and applied to aid indigent young men of the town of Mansfield in fitting themselves for the evangelical ministry. No discretion here was expressly conferred and nothing was said about it. But the court said, (page 252:) "The trustees are the persons who for the time being hold office as selectmen of a town, an office of continuous duration. To them the donor has given power, and upon them imposed the duty, of determining the persons who meet the specified requirements and who are to become beneficiaries. There are persons to determine, and a rule for their guidance. These constitute a valid foundation for a charitable use."

So in *Bronson* v. *Strouse*, 57 Conn., 147, the language of the will was that, after the executor had made certain payments, "if any surplus shall remain * *. * I will that said surplus shall be given to some poor deserving Jewish family residing in the city of New Haven." Here too nothing was said about discretion, nor was it expressly stated who was to select the poor deserving Jewish family, but both were implied from the mere application of the money in the hands of the executors as trustees. The court said:—"Upon precedent, therefore, we are required to recognize the validity of the bequest to a poor deserving Jewish family residing in the city of New Haven. Upon principle also. The

testatrix has created a testamentary trust; has appointed the persons named as the executors of her will, trustees; has clothed them with power, and put upon them an obligation, to use the income certainly for the care of her burial lot, possibly also for the relief of the poor; and has required of them the exercise of their discretion as to the time and amount of their expenditure upon the lot. She has also vested them with the power to select the family which, according to their judgment, is a member of the class specified by the testatrix, and after selection to determine when and to what amount they will expend the income or surplus for its relief."

In 3 Jarman on Wills, page 704, it is said—"Discretionary power in a trustee must and will be implied from the terms of the will when necessary." In *Clement* v. *Hyde*, 50 Vermont, 715, the court says:—"There is no discretion placed upon the trustee in this case, but the application of the income implies the exercise of it. If the trustee had applied the income arising from the trust fund in good faith and in the exercise of ordinary discretion, there could be no doubt about the testator's intention being accomplished." In *Pickering* v. *Shotwell*, 10 Penn. St., 23, it is said:—"But we certainly will not let a charitable bequest fail where there is a discretion or an option given to the trustee, and if he cannot apply it to all the contemplated objects it will be sufficient if he can apply it to any of them. But power to act at discretion need not be expressly given if it can be implied from the nature of the trust. Now this residue may be applied, by the very words of the bequest, either to a supply of good books, or the support of a school. What school? Any free-school or institution that the monthly meeting (the trustees) may select, provided it answer the description in the bequest. It is thus capable of being reduced to certainty, and as the monthly meeting has the option of applying the fund to the one object or the other, an uncertainty in one of them would not vitiate both. But both are sufficiently certain." The construction adopted will render unnecessary any discussion of the objection that

the bequest is void for uncertainty. The class is sufficiently certain and the exercise of the trustees' discretion will render the beneficiary certain.

But it is further contended that, under the discretionary power to select any public library that may from time to time exist, it is not certain that a selection will be made so as to vest the equitable estate before the statute of perpetuities would apply, and the case is likened to that of *Jocelyn* v. *Nott*, 44 Conn., 55. But the cases as we construe them have no analogy. In the case cited it was provided that whenever a Congregational church and society should, under certain conditions, desire to build upon certain land, the trustee should convey it to them; and this court said:— "No particular church is designated. * * * There is no one whose duty it is to make selection and there is no limit in respect to time. * * * Application may be made and the conditions complied with at any time, and it may not be for a thousand years to come." But in the case at bar the beneficiary is designated as one of a class, and there is one whose duty it is to make the selection; and the time cannot be too remote, for the will provides that upon the decease of the life tenants the estate shall be "appropriated, distributed and disposed of," among others "to the city of New Haven in trust." The city must of course forthwith commence to administer the trust by selecting the beneficiary and by the purchase of books for the library selected.

But it is finally contended that it is a perversion of the trust for the city to select the Free Public Library in New Haven, which was established by the city and has become a department of its new government, and so, it is said, proposes to appropriate the trust income to its own purposes. The establishment of a public library under the provisions of our statute is not, in the sense which the objection assumed, a part of the city government. It is not mandatory on the city, but purely optional and charitable. Section 144 of the General Statutes expressly authorizes any town, borough or city to "receive, hold and manage any devise, bequest or donation for the establishment, increase or main-

tenance of a public library within the same," and in view of such paramount authority that the city may take the gift, it would seem quite futile to appeal to any general principles to show that it cannot take.

But such gifts are neither made nor accepted in order to reduce taxation, and they do not necessarily or even usually have that effect. Taxation for such purpose is limited by sections 144 and 145 of the General Statutes. The effect of a gift for this charitable object most likely will be to enlarge the scope and benefit of the charity. The city is of course under the same restrictions as any other trustee would be, and can be equally restrained from any perversion of the trust.

The Superior Court is advised to render judgment in favor of the defendant.

In this opinion the other judges concurred.