ISAAC B. WOODRUFF AND ANOTHER, EXECUTORS, *vs.* BENJAMIN F. MARSH AND OTHERS.

Hartford Dist., May T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, BALDWIN and PRENTICE, Js.

A testator by his will, after expressing a desire that a large part of his estate should be "used in the improvement of mankind by affording such assistance and means of educating the young as will help them to become good citizens," gave to sixteen persons who were named a tract of land in the town of *W*, with the sum of $400,000, in trust, for the purpose of maintaining a home for destitute and friendless children on the premises, to be known as "The William L. Gilbert Home, to be under the care and control of the trustees named," who were to have power to fill all vacancies. Held—

1. That the class to be benefited was sufficiently described.
2. That the "care and control" given to the trustees was not limited to the fund but extended to the institution.
3. That this control of the institution involved the power to select the individuals who should receive the benefit of it.
4. That the charitable purpose was stated with sufficient definiteness.
5. That the "assistance" to be given to destitute and friendless children was in supplying what other children, not in that condition, ordinarily have, including food, shelter, clothing and medical attendance; and that the "means of educating" them might be afforded either by instruction at the "Home" or at schools in the vicinity, at the discretion of the trustees.

The testator left the remainder of his estate, of about the same amount, to the same sixteen trustees, for the establishment and maintenance of an institution of learning to be known as "The Gilbert School," providing certain lands and buildings should be "given free of cost for the location of the school, excepting that the present owners of said land may reserve the use and income from the hotel and barn thereon, for the period of twenty years from the date of their purchase of the land." Held—

1. That by a reasonable construction of this language it was the intent of the testator that the site for the school should be conveyed to the trustees within twenty years from its purchase by the then owners.
2. That the conveyance of the site was not a condition precedent of the taking effect of the bequest, but that it vested at once in equity in the class of beneficiaries who were ultimately to profit by it, liable to be devested by the subsequent failure to acquire the site within the time prescribed.
3. That the bequest was not therefore obnoxious to the statute against perpetuities.

The will further provided with regard to each of the bequests, that "the sum of $10,000 from the yearly income should be added each year to the principal for the period of one hundred years, and longer if the trustees should deem best." Held to be a reasonable provision and valid.

If the trustees should continue the accumulation after the hundred years for an unreasonable time, equity could interpose.

If two modes of construction are fairly open, under one of which a bequest would be illegal while under the other it would be valid and operative, the latter mode is to be preferred.

And for the purpose of giving a bequest a construction that will make it valid, it is allowable to transpose words or limitations, where warranted by the immediate context or the general scheme of the will.

Gifts to charitable uses are to be highly favored and will be most liberally construed in order to give effect to the intent of the donor, and trusts for such purposes may be established and carried into effect where, if not of a charitable nature, they could not be supported.

The resulting trusts which can be rebutted by extrinsic evidence are those which rest upon a mere implication of law, and not those arising on the failure of an express trust for imperfection or illegality.

The Superior Court has been vested by recent statutes (Gen. Statutes, §§ 776, 778, 779) with large equitable powers, extending to the application of the *cy pres* doctrine, in the case of trusts created by deed. Whether it ought not to be regarded as now having authority to deal in the same manner with charitable trusts created by will: *Quære.*

[Argued May 3d—decided May 22d, 1893.

SUIT for an adjudication as to the construction and effect of the will of William L. Gilbert; brought to the Superior Court in Litchfield County and transferred by agreement to Hartford County. Reserved for advice. The case is fully stated in the opinion.

*C. E. Perkins*, with whom was *S. A. Herman*, for the plaintiffs.

*C. E. Gross*, for the defendants.

BALDWIN, J. This is a suit by the executors of the will of William L. Gilbert, of Winchester, for a construction of certain of its provisions. The will commences by a declaration that its dispositions are the result of a desire on the part of the testator that a large part of his estate should be " used in the improvement of mankind, by affording such

assistance and means of educating the young as will help them to become good citizens." After certain legacies to his next of kin, and for educational and religious purposes, come the clauses as to which the advice of the court is sought. By the first of these he gives and devises to sixteen of his fellow townsmen, "in trust for the purpose hereinafter named," a tract of land in Winchester described as that " deeded to me by Henry Gay, together with all the buildings located thereon, and all the land which I may hereafter acquire adjoining the above-described tract," the will then proceeding as follows:—" and also the sum of four hundred thousand dollars, for the purpose of maintaining and supporting a home for destitute and friendless children, permanently, on the above described premises, and to be known as the ' William L. Gilbert Home ; ' the same to be under the care and control of the above-named persons as trustees, and said trustees shall have the power to fill all vacancies which may occur by death or otherwise ; the whole number to always consist of sixteen, eight of whom shall be residents of the Fourth School District of Winchester, and the other eight shall be residents of the First School District of Winchester, as they are now divided ; the said four hundred thousand dollars to be kept safely invested, and from the yearly income thereof the sum of ten thousand dollars shall each year be added to the principal of said fund for the period of one hundred years, and longer if the trustees deem it best. The balance of the income from said fund, including the income from said yearly additions, may be used for the maintenance of said home. And said trustees shall have the privilege of vesting said fund in mortgages secured on real estate located in this and other states within the United States ; and also in the purchase of real estate and the erection of buildings thereon, as they may deem best, for the safety and increase of said fund."

The heirs at law contend that this devise and bequest is void for indefiniteness, uncertainty, and the absence of any grant of power to select the beneficiaries.

In devises and bequests of this nature our law requires

either certainty in the particular persons to be benefited, or certainty as to the class of persons to be benefited, with an ascertained mode of selecting them out of such class. The testator, in the present case, describes the persons whom he intends to benefit as " destitute and friendless children ; " the mode of benefit to be " maintaining and supporting a home " for them " permanently," at a place particularly specified, to be known as the " William L. Gilbert Home," the same to be under the care and control of the trustees whom he has selected, and their successors in the trust; and declares the great object of his will to be the affording of " such assistance and means of educating the young as will help them to become good citizens." We think that the trustees who are to maintain and support this home, and under whose care and control it is expressly placed, are thereby invested with ample powers to select for its inmates from time to time, subject only to the limitations imposed in the concluding portion of the will, such individuals of the class of destitute and friendless children as they, or a majority of them, may think proper, or to commit the power of selection to suitable officers or agents under their supervision.

This power to admit includes power to exclude, and to remove after admission. All such acts are naturally incident to the control of the institution.

It is claimed by the heirs at law that the words, " the same to be under the care and control of the above-named persons as trustees," refer not to the " William L. Gilbert Home," but to the funds bequeathed. Such a construction would do violence to the rule which refers an adjective or relative clause to its last antecedent, as well as to the natural course of thought which runs through the whole paragraph, the latter part of which contains specific directions as to the management of the fund and the use of the income it may produce.

The charitable purpose is sufficiently definite. The children to be benefited must reside in the " Home." *Coit* v. *Comstock*, 51 Conn., 352, 382. They can reside there, at most, only so long as they are children. They must be taken

from the class of the destitute and friendless, and they should be given such assistance and means of education as will help them to become good citizens. The "assistance" should be such as children, who are not destitute and friendless, find at their homes, and may thus include food, shelter, clothing and medical attendance. The means of education may be afforded either by instruction given at the home, or by allowing some or all of the children to attend school in the vicinity, at the discretion of the trustees.

The class to be benefited is a large one, for the testator has imposed no restrictions as to race or residence, but the number of possible beneficiaries under a charitable bequest is immaterial where a power of selection is given. *Treat's Appeal from Probate*, 30 Conn., 113. The "assistance" to be furnished is quite as definitely indicated as was that in the bequest which we upheld in *Tappan's Appeal from Probate*, 52 Conn., 412, for the charitable assistance and benefit of indigent, unmarried, Protestant females over the age of eighteen years, residents of Bridgeport.

In 1887, about three years before the date of the will, a special charter was granted to the same sixteen persons who are constituted trustees under this bequest, by the name of "The William L. Gilbert Home." 10 Special Acts, 632. By this charter they were authorized to erect and forever maintain a home in Winchester for destitute minors, admittance to which should at all times be under the control of the corporators, who could make such rules for their admission as should be deemed wise and best. The corporation was empowered to receive and hold any property which might be conveyed or bequeathed to it by William L. Gilbert, and in administering its trust to comply with any lawful regulations which he might prescribe. The heirs at law of Mr. Gilbert have argued before us that, as he did not make any bequest to this corporation, it may fairly be presumed that he did not like the discretionary powers as to the admission of minors to the home which this charter gave, and that as he afterwards used different language in respect to this matter in his will, such language ought to be construed as not in-

tended to confer similar authority. Their contention, in other words, is that the charter rebuts any implication of a grant by the will of discretionary powers in the selection of beneficiaries. It is claimed, on the other hand, by the trustees, that the devise and bequest in question inure to them, not as individuals, but as a corporation, and should be construed as if expressly made to " The William L. Gilbert Home."

We find ourselves unable to accept either of these views. The trustees, by the plain terms of the will, take as natural persons, and it gives them, though in fewer words, substantially the same powers of selection and administration which are contained in the charter.

The testator left his residuary estate to the same sixteen persons, in trust " for the establishment and maintenance of an institution of learning to be known as the " Gilbert School," providing certain lands and buildings in Winchester, which he particularly describes, should be " given free of cost for the location of said school, excepting that the present owners of said land may reserve the use and income from the hotel building and barn located thereon for the period of twenty years from the date of their purchase of said land, the repairs and taxes to be paid by them so long as they shall receive the income of said hotel and barn." The will then proceeds as follows:—

" In case the necessary school buildings are not erected and paid for during my lifetime, then the amount necessary for the erection of said buildings may be taken from the principal of the aforesaid residue. Also, upon the grounds of said Gilbert School shall be provided suitable rooms for a public library for the use of said school, and which shall also be free to the inhabitants of said town of Winchester.

" The balance of said residue of my estate shall be safely invested by my said trustees, who shall have the same privileges as to investing the fund in mortgages secured on real estate in this and other states, and in purchasing real estate and erecting buildings thereon, as is given in the preceding section relating to the ' William L. Gilbert Home.' And from the yearly income thereof the sum of ten thousand dol

lars shall be added each year to the principal for the period of one hundred years, and longer if the trustees deem best. The balance of the income from said fund, including the income from said yearly additions, may be used for the maintenance of said Gilbert School and the free library abovementioned.

"It is my will that the trustees of the said 'William L. Gilbert Home' and of the said 'Gilbert School' shall be composed of men of the Protestant faith, and that the management of said institutions shall be of a non-sectarian character. Also it is my will that no children who have been educated in a Catholic parochial school shall be admitted to said 'Gilbert School.' And, further, it is my will that no teacher, scholar or inmate shall, under any condition, be admitted or receive the benefit of either of said institutions, who shall use tobacco in any form or spirituous liquors as a beverage."

Similar objections to those already considered are urged against the validity of this bequest, and also one founded on the law against perpetuities. Our statute of charitable uses (Gen. Statutes, § 2951,) specially names among the grants to be protected, such as may be made for the maintenance of "schools of learning." The testator, in following the words of the law, has sufficiently expressed the great object he had in view, and he has wisely imposed no limitations upon the nature of the instruction to be given, except that furnished at the beginning of the will by the expression of his general intent to provide such "means of educating the young as will help them to become good citizens." *Coit* v. *Comstock*, 51 Conn., 352, 379. The union of school and library is fully in accord with the policy of the state, as well as with all rules of education. Gen. Statutes, § 2155.

The character and extent of the buildings to be erected, the admission of scholars, the regulation of studies, the employment of instructors, and the selection of books for the library, have been all committed to the good judgment of the trustees by the terms of the trust, subject only to the express limitations which these impose. *New Haven Young*

*Men's Institute* v. *City of New Haven*, 60 Conn., 32, 40, 41;
*Dodge* v. *Williams*, 46 Wis., 70.

The objection that the bequest is void as tending to create
a perpetuity is founded on the claim that it may not vest
during the life of a person in being at the death of the tes-
tator, and the children of such person (Gen. Statutes, § 2952,)
or the period of twenty-one years after his decease.

It is certain that the school and library can be built only
on the designated site, and that this site was not the prop-
erty of the testator, or, so far as the will discloses, subject
to his control. It is certain also that the trust funds can be
used for no other purpose than the establishment and main-
tenance of such a school and library, and that the fact that
the trustees are persons in being and receive an immediate
estate will not save the bequest, if there is no certainty that
effect can be given to the testator's charitable intent.

In the case of *Jocelyn* v. *Nott*, 44 Conn., 55, 59, which is
relied on by the heirs at law, the devise held void was one
made to trustees, of two adjacent parcels of land, to hold
until a congregational society of sufficient ability should de-
sire to build a church upon one of them, and then to permit
such church to be built, and afterwards to convey both par-
cels to the society, the second (upon which was a house), to
be thereafter used as its parsonage, but, until such convey-
ance, to be occupied by certain individuals who were named,
if they desired, rent free, for their own benefit; the provision
as to one of these being for an occupancy by him "for him-
self and his family." There was no certainty that any con-
gregational society would offer to build such a church as was
thus contemplated within the lives of these persons and of
their children, or within twenty-one years from their decease,
and meanwhile a beneficial estate in favor of private indi-
viduals would continue in existence, which, if the provision
for the family of one of the beneficiaries were construed to
include those of his household who might survive him, might
render the land inalienable for a period beyond the limits
prescribed by law. *Odell* v. *Odell*, 10 Allen, 1, 7. Viewed
in this aspect, the result reached in *Jocelyn* v. *Nott* is not

inconsistent with the rule as stated in *Russell* v. *Allen*, 107 U. S. R., 163, 171, that "a gift in trust for a charity not existing at the date of the gift, and the beginning of whose existence is uncertain, or which is to take effect upon a contingency that may possibly not happen within a life or lives in being and twenty-one years afterwards, is valid, provided there is no gift of the property meanwhile to or for the benefit of any private corporation or person." This language was quoted with approval by this court in *Storrs Agricultural School* v. *Whitney*, 54 Conn., 342, 348, and is a clear and accurate statement of the bearing of the statute of perpetuities upon charitable bequests.

In the will now under consideration the residuary estate is wholly devoted to charitable uses, and no postponement of the establishment of the school can enure to the profit of any private interest. We do not think, however, that a postponement is possible beyond the time allowed for the vesting of any legal estate. The trustees are to establish the school, provided a certain site for it is given free of cost, "excepting that the present owners of said land may reserve the use and income from the hotel building and barn located thereon for the period of twenty years from the date of their purchase of said land, the repairs and taxes to be paid by them so long as they shall receive the income of said hotel and barn." In considering the proper construction of such provisions it is allowable to transpose words or limitations, where warranted by the immediate context or the general scheme of the will. Jarman's 19th rule. Had the wording of the condition been that the building site should be given free of cost within twenty years from the date when the present owners purchased it, excepting that they might reserve the profits of the hotel and barn until the expiration of that time, there would be nothing in the bequest savoring of perpetuity. We think that the testator intended to require a conveyance of the land within the period of twenty years from its purchase by those whom he describes as its present owners. Should a conveyance be first tendered after the twenty years, the trustees would not be bound to

accept it, since the delay would have given the grantors the profits of the hotel and barn for a longer time than that allowed by the will, thus lessening the value of the gift which he seems to have regarded as in effect a consideration for his bequest.

Had there been no reference to such a period of twenty years the bequest could have been upheld on the same principle by which that to the Smith Memorial Home in New London was recently supported. *Coit* v. *Comstock*, 51 Conn., 352, 383, 384. It would then have been fairly implied from the general scheme of the will that the gift of the land, which was the consideration of the proposed foundation, must be made within a reasonable time, and that it would be so made would have been almost a necessary presumption in case of so large an endowment for important public objects, the benefit of which would extend to every inhabitant of the town forever. A court of equity regards such a charity as vested in interest at the testator's decease in the class of beneficiaries who are to ultimately profit by it, though liable to be subsequently devested in case of a failure to perform the prescribed condition.

The testator did not make the gift of a building site a condition precedent to the taking effect of his residuary bequest. The bequest to the trustees is immediate and unconditional; and their duty to add to it by annual accumulation dates by relation from the day of the testator's death. *Lawrence* v. *Security Co.*, 56 Conn., 423, 439. Should the land not be given within a reasonable time, the intended purpose of the trust might fail, but it would be by the nonperformance of a condition subsequent. *Tappan's Appeal from Probate*, 52 Conn., 412, 419; *Literary Fund* v. *Dawson*, 1 Rob. (Va.,) 402, 421.

A bequest quite similar to that now under consideration was the subject of construction in *Chamberlayne* v. *Brockett*, L. R., 8 Cha. App., 206, 210. It was made to trustees to invest the fund and apply a part of the income to certain charitable purposes, and " when and so soon as land shall at any time be given for the purpose," in certain specified

parishes, to build three almshouses thereon, and apply any surplus towards the support of their inmates. If this language were to be taken as meaning that the charitable trust could take effect only on condition that the land should be given on which to build, the provision would have been objectionable as tending to create a perpetuity and contrary to the English statute of mortmain (9 Geo. II, ch. 30,) affecting deeds or devises to charitable uses, since, if carried out, it would have thrown this land into mortmain as effectually as if it had been owned and devised by the testatrix. The bequest was upheld, Lord Chancellor SELBORNE saying that the only real question was whether the charitable trust was constituted immediately upon the death of the testatrix or was made conditional upon the gift of land at an indefinite future time for the erection of almhouses thereon. The court was of opinion that the gift was immediate and therefore valid, " although the particular application of the fund directed by the will would not of necessity take effect within any assignable limit of time, and could never take effect at all except on the occurrence of events in their nature contingent and uncertain." See also *Henshaw* v. *Atkinson*, 3 Madd., 306, 313.

Under the *cy pres* doctrine of the jurisprudence of England a failure of the contemplated gift of land in such cases simply leaves the trust fund applicable, under the direction of the courts, to some other form of charity. For more than a century after the foundation of the colony of Connecticut equitable relief was given only on petition to the General Assembly. In 1773 a grant of concurrent jurisdiction was made to the ordinary courts of justice, but the legislature continued the occasional exercise of chancery powers down to a recent period. 2 Swift's System, 420 ; *Stanley* v. *Colt*, 5 Wall., 119. Among these was that of administering *cy pres* relief in matters of charitable trusts. *Wheeler's Appeal from Probate*, 45 Conn., 306, 315. In 1876 the General Assembly confided to the Superior Court power to order the sale of any lands devised in trust where, in its opinion, this would promote the interest of the beneficiaries. Gen. Statutes,

§ 779.   In 1880 it was given authority, in cases where the execution of a trust deed in accordance with its terms has become, by reason of a change of circumstances, impossible, or would frustrate the manifest intention of the grantor, to sell the land, and direct the application of the proceeds in such manner as it may deem most proper to secure the object for which the trust was originally created, as near as may be according to the intent of the conveyance.   Gen. Statutes, § 778.   In 1886 the Superior Court was invested with exclusive jurisdiction of all matters where the General Assembly had theretofore exercised jurisdiction over the sale of lands, when, by reason of the condition of the parties in interest or the limitations of any will or deed, no person could convey a legal title.   Gen. Statutes, § 776.

Whether, in view of the gradual and, of late, rapid withdrawal of the General Assembly from the consideration of matters proper for equitable relief, the equitable jurisdiction of the Superior Court, which has been thus expressly authorized to apply the *cy pres* doctrine to trusts created by deed, ought not to be now deemed to include authority to deal in the same manner with charitable trusts created by will, it is unnecessary to determine in the present case.   See *Birchard* v. *Scott*, 39 Conn., 63; *Dailey* v. *City of New Haven*, 60 id., 314, 325.   The bequests of Mr. Gilbert need only that favorable construction to which all charitable trusts are entitled in a court of equity, to ascertain their meaning and establish their validity.   It will certainly not be presumed that the testator intended to make any disposition of his estate in violation of law.   If two modes of construction are fairly open, one of which would turn his bequest into an illegal perpetuity, while by following the other it would be valid and operative, the latter mode must be preferred.   Gray on Perpetuities, § 633.

It is now fully recognized as a rule of our jurisprudence that gifts to charitable uses are to be highly favored, and will be most liberally construed in order to accomplish the intent of the donor, and trusts for such purposes may be established and carried into effect where, if not of a charitable

nature, they could not be supported.    *Coit* v. *Comstock*, 51 Conn., 352, 377.

Expressions not fully in harmony with this doctrine may be found in some of the earlier American decisions, of which the leading one is *Baptist Association* v. *Hart's Executors*, 4 Wheat., 1, cited and relied on in *White* v. *Fisk*, 22 Conn., 31, 52, 54. But the position there favored by Chief Justice MARSHALL, that, independently of the statute of 43d Eliz., courts of equity had no power to enforce bequests for charitable uses which would have been void on principles applicable to other trusts, was pronounced untenable in *Vidal* v. *Girard's Executors*, 2 How., 127, 146, and *Perin* v. *Carey*, 24 id., 465, 501, and declared by the same court, in *Ould* v. *Washington Hospital*, 95 U. S. R., 303, 309, to be based on a theory that had "nearly disappeared from the jurisprudence of the country." *Russell* v. *Allen*, 107 U. S. R., 163, 167; *Frazier* v. *St. Luke's Church*, 147 Penn. St., 256; *White* v. *Howard*, 38 Conn., 342, 362.

The heirs at law have not objected to the validity of either of the bequests which are under consideration on account of the provisions for accumulation, but the complaint brings them before us for our advice. The testator has directed that $10,000 out of the income of each trust fund shall be added to the principal for one hundred years, and longer if the trustees deem best, and that the income from these annual additions may be used, as it accrues, for the benefit of the charities. There will, therefore, be no period exceeding one year during which the entire income of the entire fund will not be subject to an immediate charitable use.

If these directions for accumulation were invalid, they are so far separable from the main provisions of the bequest that the latter would still remain in full force and effect. *Odell* v. *Odell*, 10 Allen, 1. But if charitable trusts vest and become operative within the period limited by law, there is nothing in the statutes or jurisprudence of this state which prevents their establishment to endure in perpetuity, and we perceive nothing opposed to public policy in permitting or requiring by their constitution such an increase of the trust

fund by reasonable additions from the annual income. *Storrs Agricultural School* v. *Whitney*, 54 Conn., 342, 348. The bequest to the William L. Gilbert Home amounts to $400,000, and that for the Gilbert School to a still larger sum. We do not regard the amount of the annual accumulation directed by the testator as unreasonable in view of the considerable income which will be immediately derived from each fund, and its certain increase by that to accrue from the annual additions. The probable increase during the next century in the population of the state and country will extend the opportunities for usefulness of the institutions which the testator has founded, and give ample field for the use of the larger income which will result from the larger funds. Should the trustees continue the accumulations, after a hundred years, for an unreasonable time, the courts can supply a ready remedy. *Tappan's Appeal from Probate,* 52 Conn., 412, 420.

The complaint in this action sets forth that the site designated for the William L. Gilbert Home, and described in the will as having been acquired from Henry Gay, had been procured by the latter at a cost of $10,000, and conveyed to the testator in consideration of an agreement by the latter to erect thereon a home for destitute and friendless children and to endow it with half of his estate ; and that he did, in fact, during his lifetime, erect thereon a suitable building for such a home, at an expense of $40,000, and receive into it a number of destitute and friendless children, who were being cared for there at his expense at the time of his decease.

It is also alleged that in 1887 the testator signed a written agreement, reciting that David Strong and others were about to purchase the land which is described in the will as the site of the proposed "Gilbert School," and that they were then to convey it to him free of cost, and that he had made a will giving half his estate to trustees for the establishment and maintenance of an institution to be called "The William L. Gilbert Seminary" on said site ; and then providing that said Strong and others were to retain possession of the land until he or his trustees should be ready to build, and

should have the use of the hotel buildings thereon for twenty years from the date of their purchase, and that the instrument should remain in the hands of Henry Gay for the benefit both of said Strong and others and of Mr. Gilbert, until the transfer of the land was made and the erection of the building begun. It is further alleged that soon afterwards David Strong and others, citizens of Winchester, at a cost of $20,000, in consequence and in consideration of this agreement, bought the land in question, and have ever since held it in trust for the purposes mentioned in the agreement; and are ready and willing to convey it to the trustees, agreeably to the terms of the residuary bequest in the last will of the testator.

Henry Gay is one of the executors of the testator, and he and David Strong are both among the trustees named in the will and parties to this action.

The heirs at law demurred to all these allegations, and their demurrer was sustained by the Superior Court. By stipulation of the parties the propriety of this action of the Superior Court has been made the subject of review upon this reservation, as fully as if the question had been raised on appeal after a final judgment in favor of the heirs.

The results to which we have arrived, and which have been already stated, have probably made it unnecessary to decide the point thus presented by the stipulation, but we think it proper to say that the allegations in question seem to us to relate to facts as to which the court had a right to inquire, in order to be placed in the situation of the testator, whether for the purpose of determining the objects of his bounty, the subject of disposition, or the quantity of interest which he intended to give. *Bond's Appeal from Probate*, 31 Conn., 183, 190; *Crosby* v. *Mason*, 32 id., 482, 487.

The first of the two bequests now under consideration is expressed to be " for the purpose of maintaining and supporting a home for destitute and friendless children, permanently," on a certain piece of land owned by the testator; the second is " for the establishment and maintenance of an institution of learning, to be known as the " Gilbert School,"

on a certain other parcel owned by third persons. The extrinsic evidence tendered by the allegations in question is that the testator himself built and opened such a "home" as he thought suitable, on the lot described in the will as deeded to him by Henry Gay, and that it was so deeded by Mr. Gay for that very purpose. Proof of such facts tends to show the exact character of the "home," for the maintenance (not the establishment) of which the will provides.

The second bequest was attacked as contrary to the law against perpetuities, on the ground that it was uncertain whether the site for the proposed school could ever be obtained.

Had David Strong and others conveyed this land to the testator before his death, we think this clearly could have been shown to disprove the possibility of any delay in the vesting of the charity by an event which had occurred before the time when the will first spoke. But if, before that time, they had acquired it in trust for this very use, under a written agreement with him to that effect, proof of such an equitable interest in him as to this property is no less admissible. Their purchase was indeed made with a view to the dedication of the land for the site of an institution to be known as the "William L. Gilbert Seminary," whereas the name given in the will of 1890 is the "William L. Gilbert School;" but if the holders of the land make no objection to this variation, the heirs at law can take no benefit from it.

We think the demurrer to paragraphs eleven, twelve and fourteen of the complaint should have been overruled.

The complaint also sets up that the testator procured, in 1887, a special charter, to the same sixteen persons appointed trustees in his will, by the name of "The William L. Gilbert Home," with authority to receive donations or bequests from him or others made in order to establish and support a home for destitute and friendless children in Winchester, and another charter to them in 1889, by the name of "The Gilbert School of Winchester," with like powers as to the establishment and maintenance of a school. The heirs demurred to these averments, and to the claim, predicated upon them,

for instructions as to the effect of the charters as respects the trusts created by the will, and the demurrer was properly sustained. Of the existence and terms of these charters the court by statute took judicial notice, but there was nothing in them or in their procurement to affect the construction of the will. As for the claim of the executors that they were relevant to show or to remove a latent ambiguity in the constitution of the trustees, it is enough to say that the will designates these plainly as natural persons, by their proper names, without the use of any words of equivocal description. *Fairfield* v. *Lawson*, 50 Conn., 501, 510. Nor would the facts alleged be admissible to rebut a resulting trust, even if the bequests under the terms of the will had been held to be too indefinite and uncertain. *Avery* v. *Chappel*, 6 Conn., 270, 275. The resulting trusts which can be rebutted by extrinsic evidence are those claimed upon a mere implication of law, not those arising on the failure of an express trust for imperfection or illegality. 1 Jarman on Wills, 424; 3 id., 735; 3 Redfield on Wills, 599.

Other questions are raised by the pleadings which it is unnecessary to consider, in view of our opinion that the trusts are valid on the face of the will.

The Superior Court is advised that the trusts for the benefit of the "William L. Gilbert Home," and of the "Gilbert School," are each valid and operative; that the provisions for accumulation therein contained are valid as respects an accumulation until the end of a hundred years from the testator's decease, and for a reasonable time thereafter, to be determined by the then trustees, subject to the control of the proper court; that the interlocutory judgment sustaining the demurrer of the heirs at law to paragraphs eleven, twelve and fourteen of the complaint should be set aside, and that part of the demurrer overruled; and that the executors should pay and convey the property bequeathed, upon said charitable trusts, to the surviving trustees named in the will.

In this opinion the other judges concurred.