MARY TAPPAN'S APPEAL FROM PROBATE.

A testatrix made a large bequest to trustees, the object of which was stated to be "the establishment of a permanent fund for the charitable assistance and benefit of indigent unmarried Protestant females over the age of eighteen years, residents of B." The will then directed that, if it could legally be done, the property should be transferred to the "Protestant Widows' Society of B., to he forever held and managed by the society for the purpose stated; but that, if this could not legally be done, the trustees should obtain an act of incorporation for a charitable institution under the name of the "Burroughs Home," and transfer the property to it, to be held and managed for the purpose stated. Held—

1. That the word "benefit," in the phrase "charitable assistance and benefit," was qualified by the word "charitable," and therefore could not be taken to mean a benefit that was not in its nature charitable as understood by the law.

2. That the description of the beneficiaries was sufficiently definite.

3. That the first mode proposed could not be legally carried out, because the Protestant Widows' Society was a corporation with powers prescribed by its charter, and its charter gave it no power to receive and administer the trust.

4. That the second mode proposed was in all respects legal.

The will gave to a religious society the residence of the testatrix and ten thousand dollars in money, on condition that within three years after her death the society should erect a chapel which should cost not less than thirty thousand dollars, and be known as the "Burroughs Memorial Chapel;" with a provision that, if there should be any good reason for extending the time beyond the three years, the judge of probate might make an order for such extension, limiting the society however to some definite time within which it should erect the chapel. Held—

1. That the condition as to building the chapel was a condition subsequent, and that the gift vested at once in the society, subject to be divested if it should fail to perform the condition.

2. That the powers given to the judge of probate to extend the time for building the chapel, qualified as it was, did not render the bequest obnoxious to the statute against perpetuities.

[Argued October 29th, 1884—decided January 24th, 1885.]

APPEAL from a probate decree denying the petition of the appellant for the distribution of a part of the estate of Catherine E. Pettengill as intestate estate; taken to the Superior Court. The appellees demurred to the reasons of

appeal assigned, and the court reserved the case for the advice of this court.    The case is sufficiently stated in the opinion.

*S. E. Baldwin* and *O. P. Backus*, for the appellant.

*C. Thompson* and *M. W. Seymour*, for the appellees.

PARK, C. J.   The questions controverted in this case grow out of the twelfth and residuary clauses of the will of Catharine A. Pettengill, late of the city of Bridgeport, deceased.   The residuary clause is as follows :—

"After paying and satisfying all of the above provisions of this my last will and testament out of my estate, all of which is charged therewith, and my executors are hereby fully empowered to sell and convey any real estate or personal estate not specifically devised for the purpose of paying any of the above legacies, if necessary so to do, which shall be determined by the judge of probate, then all the rest and residue of my estate, real and personal, of every nature and description, and all that shall belong to my estate and be undisposed of by reason of the lapsing or failure to take effect of any of said legacies or devises for any cause whatsoever, (for I intend hereby that no part of my estate shall become intestate estate), I give, bequeath and devise to the persons respectively who shall for the time being be the rector of the society of St. John's Parish aforesaid, the pastor of the First Congregational Church in said Bridgeport, and the mayor of the said city of Bridgeport, and their successors in office, and to Nathaniel Wheeler, Edward Sterling, Samuel W. Baldwin and John Hurd, all of said Bridgeport, to have and to hold the same in trust for the following purposes, and subject to the following directions, to wit :—

"1. The object sought by this gift is the establishment of a permanent fund of real and personal estate, which shall be used for the charitable assistance and benefit of indigent unmarried Protestant females over the age of

eighteen years, residents of said city of Bridgeport; and it is my wish that this fund shall be held and managed by the managers or directors of the Bridgeport Protestant Widows' Society of said Bridgeport, and their successors in office forever, as they, from their knowledge and experience in a similar department of humane work, would probably be better acquainted with the class of women this fund is intended to help and benefit; and if the same can be made practicable and legal, then I authorize and empower my said trustees, on such terms as they may fix upon, to transfer and convey the property embraced in said fund to said managers and their successors in office forever, to be held by them forever for the charitable uses and purposes indicated above and subject to the directions hereinafter given.

" 2. If for any reason the above wish and power cannot be legally carried into effect, then I direct and empower said trustees to obtain from the proper authorities in this state an act of incorporation for a charitable institution to be located in said Bridgeport, under the name of the 'Burroughs Home,' the object of which shall be to help and assist indigent unmarried Protestant females over eighteen years of age, residing in said city of Bridgeport; and upon the legal organization of such incorporation I direct and empower said trustees to transfer and convey to the said 'Burroughs Home' said fund of real and personal estate, to be held by them and their successors forever for the charitable uses and purposes indicated above, and subject to the directions hereinafter given.

" 3. If neither of the above provisions can legally be carried into effect, I then direct said trustees and their successors forever, to hold said fund of real and personal estate for the charitable uses and purposes indicated above, and subject to the direction hereinafter given; and if so held the same shall be known as the 'Burroughs Fund,' and the said rector, pastor and mayor shall, *ex officio*, be members of the board of trustees, and if any vacancy occur in the other members of the board, such vacancies shall be filled by the appointment of the court of probate;

and I direct that no bond be required of such trustees by the court of probate.

" 4. I direct that the old homestead of my father, now owned by me on John street, shall be used for the home of such females, if it be practicable; but if it should not be best, then some other portion of my land or real estate belonging to such fund may be used to establish a home thereon; but the value thereof shall not exceed, for both land and buildings, one quarter of the value of such fund, and the remaining three quarters or more of said fund shall be kept securely invested; but if deemed best to accomplish the humane purposes of this gift not to have land and buildings of one quarter of the value of the fund as aforesaid invested in a home for such females, then all of said fund can be securely invested; and I further direct that full power of sale, conveyance, exchange and reinvestment be had and exercised as circumstances may require, and the execution of all necessary instruments.

" 5. I direct that the income shall be applied annually, or at other times during the year, in such manner as may be thought best to accomplish the greatest good to the class I have hereby undertaken to help and benefit.

" 6. I direct that the term ' unmarried ' shall not exclude widows, divorced women, nor any woman who in fact has no husband, from the benefit of these provisions, providing she otherwise comes within said class.

" 7. It may be better to organize and establish a corporation under the general laws of this state to carry out the charitable uses and purposes of this trust; and if so in the judgment of said board of trustees, I direct them so to do; but I am very solicitous that this gift shall not fail to be carried into effect; and I ask said trustees to act wisely in this matter."

The testatrix declares that the object sought to be accomplished by this gift, is the establishment of a permanent fund, " which shall be used for the charitable assistance and benefit of indigent unmarried Protestant females over

the age of eighteen years, residents of the city of Bridge-port."

It is said by the appellant that the word "benefit," as used in the phrase "charitable assistance and benefit" in this bequest, does not confine the trustees to charitable benefits in the administration of the trust, but leaves them at liberty to assist the objects of the testatrix's bounty in any manner beneficial to them, although the benefit may not be charitable, as that word has been legally construed in our statute of charitable uses. But we think the word "charitable" qualifies the word "benefit" as well as the word "assistance," and that the phrase has the same meaning as if it read "charitable assistance and charitable benefit." The words "assistance and benefit" are used in it as synonymous. They are applied to an indigent class of unmarried females, and it is impossible to see how they could be assisted by a bequest without being benefited, or benefited without being assisted. It is conceded that the word "charitable" qualifies one of the words; it must therefore qualify the other, which has the same meaning. We think therefore that this bequest creates a public charity, and nothing more.

. The testatrix suggests four different modes for the administration and dispensation of this public charity, and declares her preference for the first mode named "if the same can be made practicable and legal" for the purpose; but if "for any reason" the first-named mode cannot be legally carried into effect, then she declares her preference for the second mode suggested; and in like manner for the third and fourth modes in their order.

The appellant is therefore in error when she claims that the trustees have the discretionary power to select either of the modes prescribed for the administration of the trust. They have no discretion in the matter. They must take the first, if that mode shall be found to be practicable and legal; but if not, then they must resort to the second, and that must be the mode if legal for the purpose. And so with the third and fourth modes stated.

In regard to the first mode, that the managers or directors of the Bridgeport Protestant Widows' Society of Bridgeport shall hold and manage the fund, we think the object of the testatrix cannot be carried out by it, because the corporation is not authorized by its charter to receive and administer charitable donations of this description as a trustee ; and we must, therefore, consider the second mode prescribed by the testatrix. This mode, for the administration of the public charity, is like that provided by the testator in the case of *Coit* v. *Comstock*, 51 Conn., 352. In all essential particulars they are the same. There, as here, the trustees were invested with the property till an act of incorporation could be procured from the legislature, and then they were required to transfer it to the corporation. There, as here, it was made the duty of the trustees to apply for the act as soon as it could reasonably be done, and only a reasonable time for procuring it was contemplated by the testator.

It is said by the appellant that in that case the testator expressly provided that the act of incorporation should confer all the powers necessary and proper to carry into full effect the purposes and objects of the bequest; but that in the present case the will is silent on the subject. But we think it is clearly implied. The testatrix fully states the object she wishes to accomplish by the bequest. The accomplishment of the object she commits to a corporation to be chartered by the legislature. Surely she intended that the corporation should possess all the powers necessary and proper for the accomplishment of the object. This is too manifest for controversy.

We think the charitable bequest made in the residuary clause of this will comes within the principles established by this court in the case referred to, and the considerations applied to the will in that case apply with equal force to the residuary clause in this. The same claims were made in that case against the legality of the bequest that are made in this, and they were all fully considered by the court, and decided adversely to the claimants.

It was said in that case that the description of the bene-
ficiaries was not sufficiently definite to enable a court of
chancery to carry the bequest into execution.  The same
claim is made here ; but it is manifest that the description
of the class from which the beneficiaries are to be selected
is as definite in this case as it was in that and in other cases
there referred to.  The term "Protestant," which appears
in the description in this case, is the only word that requires
consideration ; but it is obvious in what sense it was used
by the testatrix.  The term includes all those who believe
in the Christian religion and do not acknowledge the su-
premacy of the pope.

We think the public charity established in the residuary
clause of this will is valid.

Is the bequest contained in the twelfth article of the will
valid ?  The article is as follows:

"I give, bequeath and devise to the society of St. John's
Parish, an ecclesiastical society and body corporate, organ-
ized and existing under the laws of the state of Connecticut,
and located near my residence in said Bridgeport, my said
residence, comprising the land with the buildings thereon,
bounded south on Fairfield avenue, east on land of said
society of St. John's Parish, north on land of said society,
and west on land of Peter Norman, now or formerly ; and
I give also to said society ten thousand dollars in cash, to
their own use and benefit forever: but upon this express
condition, that within three years after my decease the said
society shall erect, or cause to be erected, on the grounds
of said society, near its church edifice, a chapel, which shall
cost not less than thirty thousand dollars, and which shall
be named and known as 'The Burroughs Memorial
Chapel;' and on the failure or neglect so to do by said
society, I give and devise the said real and personal estate
to my residuary legatees and devisees, to be theirs forever.
In case there should be any good reason for extending said
time beyond said three years, the judge of probate can
extend the time by his order in writing, limiting however

said society to some definite time within which it shall erect said chapel."

The first question to be considered is, whether the condition attached to this gift is a condition precedent to the vesting of the property in the society, or a condition subsequent. If it is a condition subsequent, then the property vested in the society on the death of the testatrix, but the estate was liable to become extinguished unless the condition should be complied with. We think the condition is a condition subsequent. The language of the testatrix indicates this. The grant is in the present tense—"I give," not "I will give when the society shall have erected a chapel, &c." The ten thousand dollars which she gives seems to have been given to assist the society to build the chapel, if they should elect to do so. Jarman (on Wills, vol. 2, page 517,) in summing up all the cases on the subject, says:—"If the condition is capable of being performed instanter, it is a condition precedent; if time is required for the performance, it is a condition subsequent. If a definite time is appointed for the performance of the condition, but none for the vesting of the estate, it is a condition subsequent." Wigram (on Wills, page 272,) says:—"If the condition is at all capable of being construed as subsequent, it will be deemed to be such." Washburn, in his work on Real Property, vol. 1, pages 468 and 472, quotes approvingly the rule laid down by Webster in *Finley* v. *King*, 3 Pet., 362, which was that "if the act may as well be done after as before the vesting of the estate, the condition is subsequent." See also *Hayden* v. *Inhabitants of Stoughton*, 5 Pick., 528; *Merrill* v. *Emery*, 10 Pick., 507; *Tilden* v. *Tilden*, 13 Gray, 10; *Parker* v. *Parker*, 123 Mass., 584. These authorities clearly make the condition in this case a condition subsequent to the vesting of the property in the society.

But it is said, that the power given to the court of probate to extend the time for the building of the chapel indefinitely, ties up the property indefinitely in the hands of the society, thereby rendering the bequest obnoxious to

our statute against perpetuities; for until the chapel shall be built the property is not the absolute property of the society, and they have no right to appropriate it to the charitable purpose designated in the will.

But the appellant is in error in regard to the power given to the court of probate to extend the time for the building of the chapel. The language of the will is "in case there shall be any good reason for extending the time beyond the three years," &c. There must be a good reason shown before the court of probate can extend the time at all, and even then the court is limited to a reasonable time for the building of the chapel under the circumstances then existing. The will contemplates only a short period, of such time only as is reasonably necessary for the completion of the work. The judge of probate has no discretion in the premises other than what the will gives him, and if he errs on the subject his action is reviewable by a higher court.

But it is said that the tying up of the property in the hands of the society for the period of three years renders the conveyance obnoxious to the statute, and authorities are cited from the state of New York to that effect. But it should be remembered that the statute of New York is very different from our own on the subject of perpetuities. The statute there provides that "the absolute power of alienation shall not be suspended by any limitation or condition whatever longer than during the term of two lives in being;" and it has there been held that the suspension, for a certain definite period, however short, violates the statute, for it may be longer than two lives in being. By our statute the suspension may be made during any number of lives in being when the will is made creating the suspension, and during such a period afterwards as will leave it impossible for the estate to be carried by the terms of the will to parties not in being when the will was made and not the immediate issue of parties then in being. A will must make it possible, by its terms, for parents to be born after it is made, whose issue will take the estate, in order to render the will obnoxious to our statute; which mani-

festly would require a much longer period than three years. Our statute allows wills to be made conveying property to parties in being when the will is made, or to their immediate issue, born or unborn. Hence to make them obnoxious to the statute, they must go one step further, and leave it possible for the issue of unborn issue to take the estate. The cases cited from New York, therefore, are not authority in regard to our statute.

We think the bequest to the society is not obnoxious to our statute of perpetuities.

We advise the Superior Court that the reasons of appeal are insufficient.

In this opinion the other judges concurred.