McKNIGHT-KEATON GROCERY COMPANY, Appellant, v. HUDSON & CARTE, Defendants, S. J. HUDSON, Interpleader, Respondent.

St. Louis Court of Appeals, February 21, 1910.

1. **APPELLATE PRACTICE: Instructions: Erroneous Instruction not Harmless, Where Evidence is Conflicting.** In proceedings questioning the validity of a sale of a stock of goods on the ground of fraud as to creditors, where the evidence as to fraud was conflicting and would support a finding either way, an erroneous instruction cannot be held harmless on the ground the verdict was for the right party.

2. **FRAUDULENT CONVEYANCES: Purchase of Failing Firm's Assets: Purchaser's Intent to Defraud Creditors not Material, When: Instructions.** In a suit by attachment on the ground a debtor firm had fraudulently conveyed its property so as to hinder and delay its creditors, where a purchaser filed an interplea claiming the goods by virtue of a purchase he alleged was made in good faith, an instruction granted at his request which in effect told the jury that, though they believed the debtor firm made a sale to the interpleader for the purpose of defrauding plaintiff, nevertheless the finding should be for the interpleader, unless the jury also found he had knowledge of the fraudulent intent of the debtor firm and bought for the purpose of aiding them to hinder, delay and defraud their creditors, was erroneous, there being nothing in the case which made applicable the doctrine that one creditor of a failing debtor may obtain preferential settlement of his claim even though he knows the intention of the debtor is to delay or defraud other creditors.

3. ———: ———: **Voluntary Purchaser: Facts Stated.** In such a case, where the interpleader testified he had paid $1600 for the goods purchased, $460 of which amount was deducted to secure an indebtedness owing to him by the vendor firm, and the balance paid in money, and further testified he thought the firm was solvent and owed nothing but several small obligations which were paid, he stands as a voluntary purchaser and not as a creditor forced by an emergency to acquire all his debtor's property to secure his own demand to the exclusion of other creditors.

4. ———: ———: ———: **Knowledge of Intent.** The sale of the assets of a failing firm to a volunteer purchaser, who knew the firm in making the sale contemplated a fraud on its creditors, is fraudulent and void.

5. ———: ———: ———: **Intent to Defraud not Material.** Though a creditor of a failing debtor, who has a bad intention towards other creditors, may take over such portion of the latter's property as will pay or reasonably secure his debt, if he does not aim to assist in a fraudulent scheme, yet if the creditor acquires a grossly excessive amount of property in proportion to his demand, knowing of the tortious purpose of the debtor, the transaction is invalid as to other creditors, even though the creditor who obtained the preference paid full consideration for the excess of property.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*Ward & Collins* for appellant.

(1) Where a purchaser buys property from a debtor and pays its value for it, if the sale is made by vendor with fraudulent intent to defeat his creditors and the purchaser knew of that fraudulent intent, then the sale will be void; and the purchaser is not required to participate in that fraud, knowledge is sufficient. Dougherty v. Cooper, 77 Mo. 528; Ironholt v. Hartwig, 70 Mo. 485; Hill v. Taylor, 125 Mo. 331; Frederick v. Allgaier, 88 Mo. 598; Sammons v. O'Neill, 60 Mo. App. 530; Kurtz v. Troll, 175 Mo. 506. (2) A sale made to a creditor

to pay an indebtedness to that creditor is good even if made with an intent on part of vendor to defraud other creditors, unless such purchaser participated in the fraud; but the purchaser is not permitted to buy more goods than satisfies his claim. McNichols v. Rubleman, 13 Mo. App. 515, 520; Shelley v. Boothe, 73 Mo. 74; Kurtz v. Troll, 175 Mo. 511; Albert v. Besel, 88 Mo. 150. (3) Where a purchaser appears in the transaction in a dual capacity, both as a preferred creditor and a volunteer purchaser, then the rule as to volunteer purchaser governs; that is to say, a sale will be held fraudulent as to such creditor of the vendor, if the purpose of the latter in making a sale was to hinder or delay his creditors and the purchaser knew of such intention, although he did not participate therein. Mercantile Co. v. Troll, 79 Mo. App. 558; Kurtz v. Troll, 175 Mo. 513.

*Duncan & Bragg* for respondent.

Conceding for argument's sake only, that the instructions given by the trial court at the instance of respondent were erroneous, still, under the evidence, this court would not be justified in reversing and remanding the cause, as the verdict is the only one that could have been found consistent with the evidence. It is a well-settled rule of law that a judgment may be affirmed on appeal, although infected with error, if it be apparent that a reversal would prove ineffectual and of no benefit to the party asking it, as where the court can see that the same result would inevitably be reached the second time. Henry v. Railroad, 113 Mo. 538; Daniel v. Atkins, 66 Mo. App. 342; State ex rel. v. Branch, 151 Mo. 643; Fitzgerald v. Barker, 96 Mo. 665; 3 Cyc., p. 420, 421; Vogg v. Railroad, 138 Mo. 180; Greer v. Bank, 128 Mo. 575.

GOODE, J.—This case was here on a prior appeal from another judgment in favor of interpleader (116 Mo. App. 551) which was reversed for an erroneous in-

147 App—3

struction and we regret to be compelled to reverse it again. The interpleader, S. J. Hudson, purchased a stock of goods, store accounts, one horse and three head of cattle, belonging to Lee Hudson and Emery Carte, doing business under the firm name of Hudson & Carte. Shortly after the purchase by S. J. Hudson and on August 28, 1903, plaintiff, McKnight-Keaton Grocery Company, attached the merchandise on an affidavit that the firm had fraudulently conveyed and assigned their property so as to hinder and delay creditors. The goods levied on by the sheriff were sold by order of the court and bid in by the agent of the plaintiff for $150. S. J. Hudson filed an interplea in the attachment suit, claiming the goods by virtue of his purchase, which he alleged was made in good faith and that the defendants in the attachment action had no interest in them when the writ was levied. This appeal was prosecuted from the judgment given in his favor on a trial of the issues tendered by the interplea. To render our decision clear, more of the facts not developed on the former appeal must be recited. Interpleader bought the goods, accounts and live stock on August 6, 1903, for $1600 and the assumption by him of some small bills the firm owed, and immediately took possession; the purchase price being paid by deducting from the total amount $400 which the firm owed interpleader for borrowed money, and $61 the firm or Lee Hudson owed him, paying Lee Hudson $539 in money and Carte $600 in money. The horse was valued at $100, the cattle at about $50, the book accounts and stock of merchandise each at half the balance of the total price paid ($1600). Interpleader testified he lent the firm $400 three weeks before the purchase and an account of $61 due him had been collected by the firm or his brother, thus making the $461 due him, and which was deducted from the price he was to pay. In the deal the accounts acquired by interpleader were valued at ninety cents on the dollar, though they ranged in amount from one to thirty dollars, and were

against many persons, mostly employees in sawmills thereabouts, some of whom were unknown to interpleader. The merchandise, though it was not fresh stock, was valued at one hundred cents on the dollar. It looks like the firm was in failing circumstances, as its indebtedness to plaintiff, interpleader and others, amounted to $800 or more, which was about the value of the merchandise on hand according to the evidence most favorable to interpleader, while that for plaintiff showed the stock was a remnant worth $250 or $300. Testimony for interpleader is that a careful invoice of the stock was taken before the purchase was made; whereas for plaintiff the testimony tends to prove no invoice was taken, but the goods were bought by interpleader after a brief negotiation of ten minutes and in the night; that interpleader showed a witness an itemized invoice some time after the sale, showing the stock to be worth $350 and interpleader offered to sell it to the witness for $270. The cross-examination of interpleader inclines to prove he did not have the cash to make the payment to Lee Hudson and Carte he said he made. Those men left the village of Pascola, where the store was, the night of the sale or the next day; in fact left the state. They owed plaintiff a bill of $320 which was left unpaid and may have owed other unpaid debts. Interpleader testified he bought the stock of merchandise for the purpose of enabling his brother Lee Hudson, who was in poor health at the time, to get out of business and go where the climate would suit him better; that he (interpleader) inquired about the debts of the firm and was told it owed nothing except a small amount for some tobacco, crackers and two barrels of oil, which he agreed to pay and did pay. No clear explanation was given of why the bill due plaintiff was not brought to interpleader's notice during the negotiation for the sale. Lee Hudson said he did not know the firm owed it as he was sick and did not give much attention to the books. The facts in proof would support

findings that the firm sold out in consequence of its insolvency and of fraud in the sale, participated in by all the parties to it; as they would support the finding of an innocent transaction.   Hence we cannot accede to the proposition advanced by counsel for interpleader that if the jury was erroneously instructed, the error was harmless because the record demonstrates the verdict was for the right party.   The error assigned is upon the instructions granted at his request, which, in effect, told the jury that though they believed Hudson and Carte made the sale to the interpleader for the purpose of defrauding plaintiff, nevertheless the finding should be for interpleader unless the jury also found he had knowledge of the fraudulent intention of Hudson & Carte and bought for the purpose of aiding them to hinder, delay or defraud their creditors.   In other words, the instructions for interpleader proceeded on the theory that in order for him to be defeated, it was necessary for the jury to find not only that he knew the firm of Hudson & Carte were selling to him with an intent to hinder, delay or defraud their creditors, but that he participated in their fraudulent purpose and aimed to assist them in achieving it.   On the contrary the instructions granted at the instance of plaintiff, proceeded on the theory that to defeat interpleader it was necessary only to prove the sale was made by Hudson & Carte with the intent to hinder, delay or defraud their creditors, and the interpleader, at the time of the purchase, knew of such intent on their part.   Perusal of the transcript has convinced us there is nothing in the case which made applicable the doctrine that one creditor of a failing debtor or firm, may obtain preferential settlement or security for his claim, by having property of the debtor turned over to him, even though he knows the intention of the debtor is to hinder, delay or defraud other creditors, provided the only purpose of the creditor obtaining the preference is to protect himself from loss and he does not intend to assist the debtor

in carrying out the fraudulent purpose as to other creditors. [Forrester v. Moore, 77 Mo. 650; State to use v. Mason, 112 Mo. 374, 20 S. W. 629.] The interpleader's own testimony does not tend to put him in the position of a creditor of a failing concern who was endeavoring to obtain security for his demand. He testified he thought the firm was solvent and owed nothing but the small obligations we have mentioned; that his purpose in buying was to enable his brother to seek a locality more favorable to his health; that Lee Hudson had endeavored at first to sell only his interest in the business, but interpleader refused to buy unless he could buy the entire business. On the record interpleader stands as a voluntary purchaser, and not as a creditor forced by an emergency to acquire all his debtor's property in security for his own demand to the exclusion of other creditors. As a volunteer purchaser, it was sufficient to render the sale fraudulent and void as to other creditors, if interpleader knew the firm, in making the sale, contemplated a fraud on other creditors, even though his purpose in buying the stock was to assist his brother to go where the climate was more suitable. The parties have briefed the appeal on the assumption that interpleader was both a purchaser and a creditor seeking satisfaction of his claim. It is not shown the latter purpose operated at all to influence him to buy; but the cases indicate that, as he was a creditor only to the amount of $461 and paid $1600 for the property he purchased, the same rule of decision would prevail if his motive had been to avoid losing his claim. [Esselbruegge Merc. Co. v. Troll, 79 Mo. App. 558; Smit v. Saddlery Co., 64 Mo. App. 120; State to use v. Frank, 22 Mo. App. 46; McNichols v. Richter, 13 Mo. App. 515.] Though a creditor of a failing debtor who has a bad intention toward other creditors, may take over such portion of the latter's property as will pay or reasonably secure his debt, if he does not aim to assist in a fraudulent scheme, yet if the creditor acquires a gross-

ly excessive amount of property in proportion to his demand, knowing of the tortious purpose of the debtor, the transaction is invalid as to other creditors, even though the creditor who obtained the preference paid full consideration for the excess of property; for by the payment he assists the debtor to defraud other creditors. [Cases supra.] This is the declared doctrine in Missouri, but perhaps an emergency might occur in which the rule would be relaxed, as it has been in some jurisdictions. [Wood v. Keith, 60 Ark. 425; Fly v. Screcton, 64 Ark. 184, 41 S. W. 764; Maddox v. Reynolds, 69 Ark. 541, 64 S. W. 266; Levi v. Williams, 79 Ala. 171.] As to this question we do not decide, for the case calls for no decision of it. The instructions given for interpleader were so drawn as to make plausible an argument to the jury, that although interpleader knew the purpose of the sellers was to hinder or defraud creditors, yet if his motive was simply to assist his sick brother, the sale was valid; and the jury could have found their verdict on that theory without disregarding the instructions for interpleader. The two sets of instructions declared contrary doctrines of law.

The judgment is reversed and the cause remanded. All concur.