## MARTIN *v*. MONGER.

### Opinion delivered April 13, 1914.

1.    APPEAL AND ERROR—INCOMPETENT TESTIMONY—GENERAL OBJECTION.— Where appellant objected generally to the admission of testimony, and failed to object specifically to portions thereof which were incompetent, where a portion of the testimony was competent, appellant can not complain on appeal of the admission of all the testimony.    (Page 399.)

2.    GUARANTY—ASSIGNMENT OF ACCOUNTS.—Defendant, for a valuable consideration, assigned certain accounts to plaintiff, and agreed in writing to make good all of said accounts which remained unpaid upon a certain date. *Held*, defendant's undertaking amounted to an absolute guaranty, and plaintiff's right to sue defendant thereon did not depend upon plaintiff's diligence or the insolvency of the debtors.    (Page 400.)

Appeal from Madison Circuit Court; *J. S. Maples*, Judge; reversed.

#### STATEMENT BY THE COURT.

On the 20th of August, 1913, appellant instituted this suit in the Madison Circuit Court to recover upon the following instrument: ''For value received I turn over $545 worth of my jack and horse accounts to H. H. Martin, and agree to make them all good at collection time, all due August 15, 1913.    (Various accounts mentioned, amounting to $545.)    I certify that the accounts are true and will make them all good, and will collect all I can

free of costs.'' Signed John Monger. Dated April 3, 1913.

Appellant alleged that he sold to appellee a stallion for the consideration of $545, to be paid for as evidenced by the instrument set out; that there had been paid the sum of $73, leaving a balance of $472, which appellee had refused to pay, and he prayed judgment for that sum.

Appellee answered, admitting the sale of the stallion by appellant to him, but denying that appellee agreed to make good the accounts as set forth in the instrument set out in appellant's complaint. Appellee averred that he was not to stand good for any of the accounts except those for all mares which found a colt and the colt lived to be five days old; that on such accounts appellee was to stand good for same to the appellant, but none others; that this was the verbal contract between the appellant and appellee, and that appellee requested appellant to prepare a written contract to that effect; that appellant presented the contract in suit to the appellee and that appellee, not having his glasses, did not read the same but signed it upon the representations of the appellant to the effect that the written contract as prepared by him was in keeping with their verbal contract. Appellee denied that the contract set forth in the complaint was the contract into which the parties entered, and averred that the appellant obtained the signature of appellee to the contract sued on through fraud and misrepresentation; that the representations made by the appellant to the appellee to the effect that the written contract was the same as their verbal contract were false and fraudulent, and that appellee signed the same upon the faith of such representations.

Appellant filed a reply, denying the allegations of appellee's answer.

The testimony on behalf of the appellant tended to prove the allegations of his complaint. His evidence tended to show that he sold the stallion to the appellee and agreed to take in payment the accounts mentioned in the instrument and complaint, amounting to $545, as evi-

denced by the written contract set up in the complaint. Appellant says he wrote the first of the contract and then read it to the appellee. He told appellee that $545 was not enough for the horse, and appellee said that was all he would give. Appellant then wrote the last part of the contract and handed it to appellee and said, "If you will sign that it is a trade." Appellee "took the paper and looked at it long enough to have read it and then he took the pen and signed the contract. There was never anything said about the colts living to be five days old." Appellee "had plenty of time to read the contract. There was nothing agreed to outside of the contract."

Appellee testified, in part, as follows: "I told appellant that I would give him the horse and jack accounts, five or six hundred dollars, just as they stood for the horse, and that my horse and jack were stood upon an agreement that all mares that had colts that lived to be five days old they would be liable and the debt would be good, otherwise nothing due. Appellant asked me how many of the mares would bring colts and I told him that I didn't know but that I knew of several mares close around me that would bring colts, and that I would assign and turn over to him the accounts for what they were worth for the horse. I told him I would not pay cash for the horse at any price, and I told appellant all the way through that I would not stand good for the accounts, and Martin knew and understood this contract. Martin (appellant) said, 'I am going to trade with you.' So we went to the house to take off the accounts and see just what they were and fix the matter up. I told Martin I would call the accounts off and he could put them down. Martin wrote a few lines and then read it, but I know he did not read it like this paper reads now. I did not see it then and did not read it. I haven't much education and did not pay much attention to it as we had made the contract out at the lot, and I thought and understood that he was fixing it so I could sign the accounts over to him as we had agreed to at the lot. I called off

the accounts; he put them down on the paper and added them up, all amounting to $545. Martin said 'that is not enough.' I said, 'That is not quite as much as I thought there was, but that is all I'll give. Call it off if you want to.' Martin said, 'No, I am going to trade.' So he then wrote something at the bottom of the paper and shoved it over to me and I at once signed it without reading it. I never read the contract being that I did not have my glasses, and I trusted Martin to fix the contract as we had agreed to at the lot.''

Appellant ''excepted to all the evidence which tended to contradict the terms of the contract.''

It is unnecessary to set forth more of the testimony. The court, among other instructions, gave, at the instance of the appellee, the following: ''I charge you that, although you may find that the defendant is liable on the contract in controversy as a guarantor of the sole plaintiff, unless you further find from a preponderance of the evidence that the plaintiff has used due diligence to collect said accounts, or that the persons who owe said accounts not collected are insolvent and unable to pay same, you should find for the defendant.''

The appellant excepted to the ruling of the court in granting the above prayer. The verdict and judgment were in favor of the appellee, and this appeal has been duly prosecuted.

*Festus O. Butt,* for appellant.

It was incumbent upon appellee to acquaint himself with the terms of the contract which he signed, and unless same was misrepresented to him, after he had ample opportunity to acquaint himself with the terms, he can not be heard to say that he did not read same over, nor to testify as to his understanding of same different from the written terms of the contract. 9 Cyc., ''Contracts,'' 389; 110 N. W. (S. D.) 194; 78 Ark. 177; 84 Ark. 349; 71 Ark. 185; 81 Ark. 134; 108 Ark. 503; 105 Ark. 50; 14 Pa. St. 489-496; 91 U. S. 45; 66 Ark. 445; 138 S. W. 635.

Instruction No. 7, given at the instance of appellee, was error because the contract on its face was absolute.

"An agreement to 'stand good for' the doing of a thing is an original undertaking and the promisor is a guarantor. No notice to him of failure of the original debtor to pay is necessary." 6 L. R. A. (Ind.) 686; 111 S. W. (Tex.) 790; 43 S. W. (Tex.) 596; 20 Cyc., "Guaranty," 1425; 20 Cyc. 1446, 1450, 1458; 14 N. E. 218; 71 Ark. 585; 68 Ark. 423.

A guaranty of payment by a certain day dispenses with demand and with notice. 4 Ark. 76; 10 Ark. 585; 59 Ark. 86; 24 Ark. 511; 20 Cyc., "Guaranty," 1460.

Failure to exhaust the primary debtor does not release the guarantor. 60 Am. Dec. (Ala.) 498; 50 Am. Rep. (Ind.) 763; 117 Ia. 262; 38 Vt. 286; 20 Cyc. 1465.

*W. N. Ivie,* for appellee.

A general exception to the entire testimony of a witness is insufficient where a portion of the testimony is competent. 65 Ark. 106; 76 Ark. 276; 76 Ark. 539; 78 Ark. 291.

Even if the exceptions of appellant to the evidence had been properly saved, still he has waived same by not specifically setting them out as a ground for reversal in his motion for a new trial. 78 Ark. 40; 75 Ark. 111.

Appellant having introduced incompetent testimony, can not complain of the introduction of similar testimony by his adversary. 66 Ark. 292; 75 Ark. 51.

The contract being ambiguous and doubtful, it was competent to introduce parol testimony to show the intention of the parties. 75 Ark. 55; 20 Cyc. 1423.

Where a contract is susceptible of more than one fair interpretation, it will be construed as unfavorably as its terms will admit against the party who prepared it. 73 Ark. 338; 74 Ark. 45.

Appellant's objection to instruction No. 7 should not avail because no specific objection was made to it, and because it was not properly brought into the motion for new trial. 66 Ark. 264; 78 Ark. 40; 85 Ark. 138; 70 Ark. 427; 44 Ark. 213; 34 Ark. 721.

The contract shows on its face that it was a conditional undertaking, and not an absolute guaranty, and it was incumbent upon appellant to make a reasonable effort to collect the debt from the principal debtor, and until he does, no cause of action accrues upon the guaranty. 20 Cyc. 1448, 1449, 1491; 71 Conn. 39; 85 Ark. 422; 55 Conn. 251; 14 Wend. 231; 26 Vt. 406; 1 Hill (S. C.) 56.

WOOD, J., (after stating the facts). The appellant did not make any specific objection to the admission of the testimony which he now contends was incompetent because it tended to contradict the terms of a written contract. At least part of the testimony admitted was competent, and the appellant is not in an attitude to complain of the ruling of the court in admitting it all, for he only made a general objection. "A general objection to the entire testimony of a witness is insufficient where a portion of the testimony is competent." *Central Coal & Coke Co.* v. *Niemeyer Lumber Co.*, 65 Ark. 106. See also *Maxey* v. *State*, 76 Ark. 276; *Mallory* v. *Brademyer*, 76 Ark. 538; *Kansas City So. Ry. Co.* v. *Leslie*, 112 Ark. 305.

It was a question for the jury, under the testimony, as to whether or not the appellant perpetrated a fraud upon appellee in entering into the contract.

The court erred in granting appellee's prayer for instruction No. 7, above set forth. If the contract was free from fraud in its making, then appellee is bound to perform it according to its terms, for it is unambiguous and was an absolute guaranty to pay the accounts by August 15, 1913. The language of the instrument, when construed as a whole, shows an absolute guaranty on the part of the appellee to make all accounts "good at collection time," and collection time was August 15, 1913. The court, as indicated by the seventh prayer for instruction, granted at the instance of appellee, construed the contract not as an absolute, but as a conditional, guaranty. This was error.

In the case of "an absolute guaranty, the guarantor is bound immediately upon the failure of the principal debtor to perform his contract, without any further steps taken by any one, or without further conditions to be performed." 20 Cyc. 1450-1458.

"An absolute guaranty will not be affected by failure of the guarantee to make demand or give the guarantor notice of the principal's default." *Lane* v. *Levillian,* 4 Ark. 76.

The instrument sued on evidenced an original undertaking upon the part of appellee to make good all the accounts described therein at collection time, and in such case nothing was necessary to be done, as we have seen, on the part of the guarantee by way of attempting to collect the accounts. See *Friend* v. *Smith Gin Co.,* 59 Ark. 86; *Braddock* v. *Wertheimer,* 68 Ark. 423; *Stewart* v. *Sharp Co. Bank,* 71 Ark. 585, and other cases cited in brief of counsel for appellant.

If the language of the instrument had been simply "I certify that the accounts are true," and ended at that, or if the language were "I guarantee that the accounts are good," then counsel for appellee may have been correct in his contention that the instrument in controversy was but a conditional guaranty, but it will be observed that the language of the instrument shows that the appellee intended to "make the accounts good at collection time." The language can only mean an absolute guaranty at collection time.

Appellee's seventh prayer for instruction, therefore, was inherently defective. Inasmuch as it is impossible to tell whether or not the verdict was based upon this instruction, for the error in granting it the judgment must be reversed and the cause remanded for a new trial.