[No. 21460.   Department One.   March 18, 1929.]

ANTON BARACH *et al., Appellants,* v. ISLAND EMPIRE
TELEPHONE & TELEGRAPH COMPANY,
*Respondent.*[1]

[1]Reported in 275 Pac. 713.

*Burkey & Burkey (J. F. O'Brien,* of counsel), for appellants.

*Hayden, Langhorne & Metzger,* for respondent.

TOLMAN, J.—Appellants, as plaintiffs, brought this action to recover for personal injuries sustained by the appellant wife which, it is alleged, were the result of being struck by an auto truck owned by the defendant and operated by its employee, who was also its manager and one of its officers and stockholders. The case was tried to a jury, which returned a general verdict in favor of the defendant. The plaintiffs have appealed from an adverse judgment based on the verdict.

Errors are assigned upon five instructions given by the court to the jury, and upon the denial of their motion for a new trial. The position taken by the respondent, as hereinafter set forth, makes it necessary to give a brief statement of the salient facts.

Appellants live on a small acre tract fronting on a paved highway in a community known as Gig Harbor, their home being about half a mile northerly from the ferry landing toward what is known as the head of the bay. The road upon which their property fronts is paved to a width of sixteen feet, but on the curve in front of appellants' home, the pavement is eighteen feet wide. There are no sidewalks on either side, but the roadbed is graded to a width of four or five feet on each side of the pavement, such dirt and gravel shoulders being practically level with the pavement.

The roadway seems to abound in curves, and the entrance to appellants' premises is near the center of the inner side of a rather sharp curve.

On December 4, 1926, the appellant wife in the late afternoon walked from her home about half a mile toward the ferry landing, there made a purchase of meat, and, returning to her home, was given a ride in an automobile by a neighbor who lived in the vicinity. The car in which she rode passed the entrance to her home, and came to a stop on its right hand side of the road, partly off the pavement, about seventy-five feet northerly and on the opposite side from her gate. She immediately alighted from the car and, according to her testimony, walked around in front of it, looked in both directions for approaching traffic, saw respondent's truck on a curve, distant six or seven hundred feet, and then walked rapidly across the pavement on to the dirt embankment, and turned southerly and walked along on the dirt embankment toward her gateway. Having so proceeded only some thirty or forty feet, she was, according to appellants' theory, then run down and injured by the respondent's truck, coming from her rear, traveling at a high rate of speed, with the right wheels off of the pavement and on the dirt embankment, and that no warning of any kind was given by the driver of the truck before the impact.

The appellants also showed that the truck belonged to the respondent, that it was the one commonly employed in its business and that the driver was an employee of respondent and a stockholder and its vice-president and manager, who had no regular hours of employment, in that he was the "trouble man" and was on call at all hours. It further appeared that, at the time, there was considerable telephone equipment and some tools in the truck.

Upon the other hand, the respondent offered testi-

mony tending to show that the truck was driven at a speed of about twenty-five miles an hour, entirely on the pavement; that the driver as he approached the point where the automobile, from which Mrs. Barach had alighted, was parked, was blinded by its head lights so that he could not see anything beyond; that he did not slacken his speed and, on passing beyond the obstructing head lights, saw a clear roadway before him. At about that time, the driver claims that he saw a woman, presumably Mrs. Barach, coming from behind the automobile from which she had alighted, and that she was practically in the middle of the pavement when he passed her; that he felt a jar or impact, and upon stopping his truck, found Mrs. Barach injured, and from certain circumstances, which he details, he drew the conclusion that she ran into the rear fender of his truck.

It was not denied that the truck belonged to the respondent, and was commonly used at all hours in its business, but the driver testified in detail that he had finished his day's work for the respondent a few minutes before; had loaded some material which the respondent had sold to another company and which he had been directed to deliver to Olalla, and then started in a direction directly opposite from Olalla, for the ferry landing, there to get a suit of clothes for himself, which he had left three days before to be cleaned and pressed, and that he had no business for respondent in that direction.

There was testimony of others connected with the respondent company, tending to show that the driver of the truck had no business for the company in the direction which he was going at the time, and a Mrs. Jones, who had a place of business near the ferry landing, testified that the driver had left a suit of clothes to be cleaned and pressed on December 1, and that he

came and got it between the hours of five p. m. and six p. m. on December 4. On cross examination, however, she admitted making statements at a prior time to the effect that her book did not show who was the customer who left and afterwards received back this suit, and that she did not know and had no way of knowing whose suit it was.

This testimony raised three issues upon which the court instructed the jury.

(1) The question of negligence of the driver of the truck;

(2) The question of the contributory negligence of Mrs. Barach, and

(3) The question of whether the truck was in the service of the defendant at the time of the accident, or had been diverted from that service and was being used solely for the personal advantage of the driver.

██ It is respondent's contention that a general verdict for the defendant found all of these issues in its favor, and, since the last named issue concededly was correctly submitted to the jury, then, notwithstanding any possible error in the submission of the issues of negligence and contributory negligence, the judgment must be affirmed.

Our statute on verdicts, Rem. Comp. Stat., § 362, is cited and apparently relied upon, but the statute reads:

"A general verdict is that by which the jury pronounces generally upon all or any of the issues either in favor of the plaintiff or defendant."

The words "all or any" are significant, and indicate what might take place in such a case as this, and what probably did take place here, that is, the jury, guided by an erroneous instruction, reached the conclusion that the driver of the truck was not negligent, or that Mrs. Barach was guilty of contributory negligence, and so finding, saw no need to go further and consider

in whose behalf the truck was being operated at the time of the accident. In other words, a finding against the plaintiffs on any one of the three issues would be sufficient to justify a verdict against them, and if any one was improperly submitted, such improper submission must be presumed to have caused an adverse finding upon that particular issue.

Respondent produces a strong showing of authority to support its contention. Some states, notably Ohio, seem to have clearly adopted such a rule. From other states, there are produced many cases in which expressions may be found that seem to support the doctrine, but a careful analysis greatly reduces the seeming strong array. Among the cases cited and relied upon by respondent upon this issue are *McAllister v. Hartzell*, 60 Ohio St. 69, 53 N. E. 715; *Ochsner v. Cincinnati Traction Co.*, 107 Ohio St. 33, 140 N. E. 644; *City of Butte v. Mikosowitz*, 39 Mont. 350, 102 Pac. 593; *Walters National Bank v. Bantock*, 41 Okl. 153, 137 Pac. 717; *Farmers' State Bank of Ames v. Harp*, 54 Okl. 326, 153 Pac. 863; *Mintzer v. City of Richmond*, 27 Cal. App. 566, 150 Pac. 799; *Foster v. Smith.* 52 Conn. 419; and *Worth v. Dunn*, 98 Conn. 51, 118 Atl. 467.

In C. J., 1046, it is said:

"On the other hand, error in instructing the jury on the measure of damages will be considered prejudicial error and a ground for reversal, where the instruction manifestly has a tendency to mislead the jury; where the verdict appears excessive; where the amount awarded is large, although not necessarily excessive; or where the damages assessed by the true rule might have been more or less than those assessed by the jury. And the rule has been laid down in a number of decisions that erroneous instructions are ground for reversal, unless it clearly appears from the whole record, or unless the verdict shows, that the jury was not misled."

The states supporting the latter part of the rule, as quoted, are said to be Colorado, Indiana, Iowa, Missouri, North Dakota, Texas, Georgia, Michigan, New Hampshire, New York, South Carolina and South Dakota; and among the cases which seem to support the rule are *Evansville & T. H. R. Co. v. Hoffman,* 56 Ind. App. 530, 105 N. E. 788; *Martin v. Monger,* 112 Ark. 394, 166 S. W. 566; *McKnight-Keaton Grocery Co. v. Hudson & Carte,* 147 Mo. App. 31, 126 S. W. 511; *Farnsworth v. Tampa Electric Co.,* 62 Fla. 166, 57 South. 233; *Jennings v. White,* 139 N. C. 23, 51 S. E. 799; and *Funk v. St. Paul City R. Co.,* 61 Minn. 435, 63 N. W. 1099.

In 2 R. C. L., § 196, p. 235, it is said:

"In case of error occurring in the course of a trial the authorities are in conflict regarding the presumption as to the effect of such error. According to what seems to be the prevailing rule, the reviewing court will presume that such error was prejudicial unless the record shows the contrary."

Whether this be the majority rule or not, it seems to be in harmony with what has been our practice. *Shew v. Hartnett,* 121 Wash. 1, 208 Pac. 60; *Babcock v. M. & M. Construction Co.,* 127 Wash. 303, 220 Pac. 803. And we are now convinced that it is the juster and sounder rule and on reason we adopt it.

■ Respondent next urges that, in any event, no other verdict could be allowed to stand, and the judgment must be affirmed because the evidence shows, without substantial contradiction, that the truck was, at the time of the accident, not in the service of the respondent, but was being operated by the driver solely for his individual purposes.

It is true that appellants relied upon the presumption flowing from the ownership and general use of the truck, and equally true that the driver testified

squarely against that presumption, but he was an interested witness. *Kneff v. Sanford,* 63 Wash. 503, 115 Pac. 1040; *Moore v. Roddie,* 103 Wash. 386, 174 Pac. 648; *Vernarelli v. Sweikert,* 123 Wash. 694, 213 Pac. 482; *Feldtman v. Russak,* 141 Wash. 287, 251 Pac. 572.

It is contended, however, that the driver was corroborated. To some extent he was. Others connected with the respondent, and therefore likewise interested witnesses, testified that there was no record in the office of respondent of any business or trouble call which would require the driver and the truck to be at the place of the accident at that time, and Mrs. Jones testified that the driver came to her place of business on a personal errand soon after the accident occurred, but if the jury believed all this, still they would have to believe, in addition, the unsupported and uncorroborated statement of the driver that he had no business for the respondent in that direction at that time, and that he drove from its office toward the ferry landing solely on his personal affairs. There were circumstances which might in the minds of the jury weigh against the driver's testimony in this respect, and, under our cases cited above, we think the question was for the jury.

█ Coming then to the instructions complained of, we are satisfied that all, except two or three, when fairly construed and considered as a part of the whole, may safely be said to fairly state the law, and we shall not take space to treat of the various objections to them in detail.

But, however, the court gave one instruction which fairly stated the burden that the law places upon a pedestrian crossing a paved highway, and so framed it that the jury could, and in the light of a subsequent instruction, probably did, believe that the same care must be continued after the pavement has been passed.

and while the pedestrian was walking along the dirt shoulder with back turned toward oncoming vehicles. In a subsequent instruction, after quoting the statutory duty of pedestrians on the highway between one half hour after sunset and one half hour before sunrise, and stating that a violation of that law which contributed to her injury would bar plaintiff's recovery, the following was added:

"In applying this instruction to the facts as you find them, you are further instructed that the improved portion of the highway which lies adjacent to the edge of the pavement, the shoulder of the highway, as it is called, is as much a part of the highway as is the pavement itself."

This, we think, was clearly error. The statute, Rem. Comp. Stat., § 6340, as amended by the Laws of 1923, p. 604, ch. 181, provides, in subdivision 7, as to the duties of pedestrians in the language which the court quoted, but the section also provides in subdivision 9:

"It shall be unlawful to operate or drive any vehicle or combination of vehicles over or along any pavement or gravel or crushed rock surface on a public highway with one wheel or all of the wheels on one side of said vehicle or combination of vehicles off of the pavement or gravel or crushed rock surface except for the purpose of turning off or passing on the highway or for the purpose of stopping off the pavement or gravel or crushed rock surface." Rem. 1927 Sup., § 6340.

A pavement, sixteen or eighteen feet wide, is clearly intended as sufficient for vehicular traffic under ordinary conditions, and the exceptions set forth in the statute are intended to take care of those conditions which are out of the ordinary. The legislature has the power and the right to confine ordinary traffic to the paved portion of the highway, and having done so, the pedestrian with knowledge of that fact, has a right to believe that the legislative injunction will be obeyed,

and act accordingly. A driver violating this statutory provision, should be placed under the burden of showing that his act in driving off of the pavement, for other than the purposes specified in the statute, was justifiable or necessary.

In another instruction, the court undertook to give to the jury the law applicable when a driver cannot see ahead beyond the glare of other headlights which he is approaching. After stating that condition, the court instructed:

"Such fact did not make it incumbent upon the said Hugo Finholm to suspend the operation of his truck for the purpose of ascertaining if the roadway behind the glare of said headlights was clear, as the law considers the glare of headlights as an incident of travel on the highways, and his failure so to do is not negligence upon his part, but it did require him to exercise greater care than he otherwise would."

This instruction disregards many facts and circumstances which might have had weight with the jury, such as that the place of accident was in a thickly settled community, though outside of the corporate limits of any city or town; that there were no sidewalks and apparently many pedestrians used the pavement or the adjacent dirt shoulders for passage about their affairs, and apparently the jury might have believed that this custom was so common as to require the driver of the truck, who was well acquainted with the situation, to use care commensurate. The most that should have been said, would be to tell the jury that the law did not require the impossible, but only what was reasonable under the circumstances; that a failure to stop would not be negligence as a matter of law, but that the driver should be held to the duty of acting as a reasonably prudent person would under like circumstances. We think there were facts and circum-

stances in the case from which reasonable men might have drawn different conclusions, and therefore the question of negligence was one of fact for the jury.

Judgment reversed, and cause remanded with instructions to grant a new trial.

FULLERTON, PARKER, and BEALS, JJ., concur.

