[No. 22756.  *En Banc.*  June 22, 1931.]

ALFRED MITCHELL *et al., Appellants,* v. NALLEY'S, INC., *Respondent.*[1]

*Hayden, Langhorne & Metzger,* for appellants.

*Louis J. Muscek* and *Ralph S. Pierce,* for respondent.

PARKER, J.—The plaintiffs, Mitchell and wife, seek recovery of damages for personal injuries suffered by Mrs. Mitchell, claimed as the result of the negligent driving of the defendant Miss Roberts of a Ford coupe automobile owned by the defendant Nalley's, Inc., in the course of her employment by it.  The case proceeded to trial in the superior court for Pierce county sitting with a jury, and resulted in a verdict awarding to Mitchell and wife recovery against both Miss Roberts and Nalley's, Inc.

Counsel for Nalley's, Inc., by motion for a directed verdict, challenged the sufficiency of the evidence to

[1]Reported in 300 Pac. 526.

sustain any recovery against it; which motion the trial court tentatively denied and submitted the case to the jury. After the rendering of the verdict, counsel for Nalley's, Inc., by motion for judgment notwithstanding the verdict, renewed its challenge to the sufficiency of the evidence to sustain any recovery against it; which motion the trial court sustained. Thereafter final judgment was accordingly rendered awarding recovery against Miss Roberts and denying recovery against Nalley's, Inc. From this disposition of the case in the superior court, Mitchell and wife have appealed to this court.

The ground of the challenge to the sufficiency of the evidence and the trial court's sustaining of the challenge was that the evidence failed to sustain any finding or conclusion that, at the time Mrs. Mitchell was injured as the result of Miss Roberts' driving of the coupe, she was acting for Nalley's, Inc., in the course of her employment by it. Whether or not the trial court erred in so disposing of the case in favor of Nalley's, Inc. is the question here to be determined.

At the time in question, and for sometime prior thereto, Nalley's, Inc. was engaged in food manufacturing, maintaining and operating its factory at 604 South Sprague street, in Tacoma. It then owned and kept, apparently for the personal use of its president, a Ford coupe automobile. Miss Roberts was then one of its employees, her duties being in the mayonnaise manufacturing department putting caps on bottles. She was paid only for the time she worked, and was occasionally laid off. On the day in question she was not working; though she remained an employee with the understanding that she would soon be called back to work. Her duties as an employee did not require any use by her of an automobile. During the forenoon of the day in question, Miss Roberts went to the factory between

ten and eleven o'clock and asked Mr. Nalley, the president, for the use of the coupe. She testified, as far as need be here noticed, as follows:

"Q. Where do you live? A. 3830 North 8th street. Q. What is your business? A. I work for Nalley's, Inc. Q. Were you employed by that company on the 29th of June last year [the day of the accident]? A. I was. Q. Were you working on that day? A. I was not. Q. Relate the incidents that took place that morning. A. I went down to the factory. I saw Mr. Nalley and I asked him if I could use the car for about half an hour, and he said 'For half an hour, be sure and be back, because I am going to use it,' and he just casually asked me what I was going downtown for. I told him I had a few errands of my own and I would look over some material at Stone-Fisher's about the uniforms for the new factory, and he said, 'All right, be sure and be back.' I went to Fisher's, and from Fisher's I went to the Bonneville Hotel; picked up my girl friend, Wanda Pavlock, and from there I went to the factory and got out and looked for Mr. Nalley, the half hour was about up. I thought I would see if I could not have the car for the afternoon for a little while. Mr. Nalley was not there, so I left and took her back to the Bonneville Hotel, and then I came back home and I staid and had lunch with mother and asked mother if she would not like to go out for a little drive. Q. How long were you at your home before you started out in the car again? A. Oh, I should say it was an hour or so. Q. Where was the car during that period? A. Setting in front of the house. Q. Approximately how far do you live from where this accident took place? A. Not very far, a few blocks. Q. What did you do after dinner [lunch]? A. We went out driving towards the Point [Point Defiance]. Q. Who did you take with you? A. Mother. Q. Did you call Mr. Nalley up at that time? A Yes, sir. Q. Did you get him? A. He was not there. Q. Where did you go from your mother's home? A. Out towards Point Defiance, almost to the Point. Q. Now then you started on your homeward journey from there, is that correct? A. Yes, sir. We got to North 9th and Alder . . . [Here Miss

Roberts described the collision occurring there between the coupe she was driving and another automobile in which Mrs. Mitchell was riding, which collision resulted in Mrs. Mitchell's injuries.]''

The above quoted testimony is corroborated by the testimony of Mrs. Roberts, Miss Roberts' mother, as to Miss Roberts coming home and their pleasure trip out to and returning from Point Defiance to the scene of the accident as follows:

''Q. You are the mother of Dorothy Roberts? A. Yes, sir. Q. Do you recall the 29th of June last year as to what took place on that day? A. I do. Dorothy came home. It was near noon. She offered to take me for a ride, and I was busy getting lunch, so I had her sit down and eat lunch, and then she called up the factory to see if Mr. Nalley was back. He was not in then. After lunch I had her again call up the factory to see if he was there to see if she could run the car. He was not there. She said, 'Well, come and go for a little ride; you can go to the factory and come back with me on the street car.' So I did. We went out to the Point, practically to the Point. When we came back, we followed the car line, the Point Defiance car line, to 26th and Alder. We turned at Alder [south] and were approaching 9th street and Alder, and I should say we were around fifty feet anyway, when I noticed . . . [Here Mrs. Roberts describes the collision resulting in Mrs. Mitchell's injuries.]''

The above quoted testimony of Miss Roberts has some further corroboration in the testimony of Miss Pavlock as to Miss Roberts coming to see her at the Bonneville Hotel and her going back to the factory with Miss Roberts.

The geography of these occurrences is enlightening in our present inquiry. It is approximately as follows: The factory of Nalley's, Inc. was then situated at 604 South Sprague street. This is about one mile west and a little north from the large Stone-Fisher

well known department store, which is situated at the approximate center of the retail business district of the city. This, manifestly, is the place where it was understood between Miss Roberts and the president, if their evidence is to be believed, she might drive the coupe and return it to the factory in half an hour, in so far as she was to perform any errand for her employer.

The Bonneville Hotel is situated about a mile north and somewhat west of the Stone-Fisher department store. It may be conceded that Miss Roberts would not be driving out of her way to the Stone-Fisher store by going by way of the Bonneville Hotel. The home of Miss Roberts, from which she started to take her mother on the pleasure ride, is some two miles west and somewhat north of the Stone-Fisher department store, and hence about a mile northwesterly from the factory of Nalley's, Inc. The words "the point" and "Point Defiance," as used in the testimony, manifestly mean Point Defiance Park, which is some three miles north and somewhat west of the home of Miss Roberts and her mother. The place of the accident in question at the North 9th and Alder street intersection is about three-quarters of a mile west and somewhat north of the factory and a few blocks east of the home of Miss Roberts and her mother. None of these locations, other than the Bonneville Hotel, can be said to be on any reasonable route between the factory and the Stone-Fisher department store.

Assuming that the injuries suffered by Mrs. Mitchell were the result of negligence on the part of Miss Roberts' driving the coupe, as the jury found, the claimed right of recovery therefor as against Nalley's, Inc. has no support other than the bare presumption that the coupe was being driven by Miss Roberts in the

course of her employment, arising from the fact that the coupe was owned by Nalley's, Inc. and that she was then an employee of Nalley's, Inc. While we have held that such ownership and employment, being proven or admitted, create a presumption of liability by the owner and employer for such negligence, we have also held that such presumption becomes of no force and is not within itself evidence, when rebutted by credible evidence in addition to the testimony of interested witnesses. See *Feldtman v. Russak,* 141 Wash. 287, 251 Pac. 572, and citations therein of our prior decisions. The presumption of liability of Nalley's, Inc. for the injuries suffered by Mrs. Mitchell arising from the employment of Miss Roberts and the ownership of the coupe, we think, must be held, as a matter of law, to have been overcome by the testimony of Miss Roberts and Nalley, the president, corroborated, as that testimony is, by other credible evidence.

We have these outstanding facts: (1) The employment of Miss Roberts did not necessitate the use by her of an automobile. This is shown by the testimony of Miss Roberts and the president, and corroborated by testimony of other witnesses, at least some of whom were disinterested. (2) Miss Roberts took her mother for a pleasure ride out to Point Defiance Park several miles beyond any contemplated trip or use of the coupe for Nalley's, Inc., upon her obtaining permission to use it. This is corroborated by the testimony of the mother as to the nature and purpose of what may be well termed a pleasure trip of the mother and daughter to and from Point Defiance Park. (3) Miss Roberts drove the coupe to the Bonneville Hotel for the pleasure of seeing her friend, Miss Pavlock. This is corroborated by the testimony of Miss Pavlock, in so far as the nature of Miss Roberts' visit to her at the hotel is concerned. (4) The collision resulting in injuries to Mrs.

Mitchell occurred while Miss Roberts and her mother were on the return journey of their pleasure trip to Point Defiance Park, at a place some three-quarters of a mile northwesterly from the factory, wholly off any reasonable route between the factory and the Stone-Fisher store. (5) Miss Roberts was not working for Nalley's, Inc., during the day in question and was not paid for that day, though she was then, in a sense, its employee. This appears by her own testimony and is corroborated by other credible evidence.

Counsel for Mitchell and wife cite and rely upon our decision in *Barach v. Island Empire Tel. & Tel. Co.,* 151 Wash. 279, 275 Pac. 713, decided since *Feldtman v. Russak,* 141 Wash. 287, 251 Pac. 572. That decision, we think, is not controlling here. That employee was driving a truck belonging to his employer, the telephone and telegraph company, which was his principal duty as such employee. He had finished his day's work and was just starting away from his place of work with the truck to return it to its proper place of keeping until the beginning of the following day's work. He had proceeded but a short distance and was, but comparatively slightly, departing from what may be termed his proper course in returning the truck from the place of that day's work to the place of its keeping until the beginning of the next day's work.

We conclude that the judgment of the trial court exonerating Nalley's, Inc., from liability must be affirmed. It is so ordered.

TOLMAN, C. J., FULLERTON, MITCHELL, BEALS, and MILLARD, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent. The facts, interest and credibility of the witnesses as to the errand of the driver of the Nalley car deviation from the proper scope of the errand, and all other matters con-

190

nected with the liability of the Nalley's, were properly for the jury to determine.

Granting judgment n. o. v. in favor of Nalley's was error. That part of the judgment should be reversed.

MAIN and BEELER, JJ., concur with HOLCOMB, J.